FURBY v RAYMARK INDUSTRIES, INC

Docket No. 85897. Submitted April 8, 1986, at Detroit. Decided September 8, 1986.

Kenneth Furby and Shelbie Furby, filed suit in the Wayne Circuit Court against Raymark Industries, Inc, and others alleging that plaintiff Kenneth Furby's asbestosis was caused by his exposure to products containing asbestos which he used in the course of his work in the insulation industry. Plaintiffs' complaint pleaded claims for negligence, breach of warranty, strict liability, and a claim by plaintiff Shelbie Furby for loss of consortium. The circuit court, James E. Mies, J., granted summary disposition of the loss of consortium claim, ruling that plaintiff Shelbie Furby could not maintain a claim for loss of consortium since she was not married to plaintiff Kenneth Furby at the time Mr. Furby first became exposed to, or became aware of, the possibility of his alleged asbestos-related disease. Plaintiffs appealed.

The Court of Appeals *held:*

1. Generally, evidence of a lawful marital relationship at the time of the tortious conduct and resultant injury to one spouse is required before the other can bring an action for loss of consortium. Courts generally agree that a person should not be permitted to marry a cause of action. However, in this case, the Court of Appeals concluded that plaintiffs' underlying cause of action for product liability and plaintiff Shelbie Furby's claim for loss of consortium did not accrue until such time as plaintiff Kenneth Furby discovered or, through the exercise of reasonable diligence, should have discovered that he had a possible cause of action.

2. The exact time when plaintiffs' underlying cause of action

REFERENCES

Am Jur 2d, Husband and Wife §§ 440 *et seq.*

Am Jur 2d, Master and Servant §§ 121 *et seq.*

Am Jur 2d, Pleading §§ 230 *et seq.*

Am Jur 2d, Products Liability §§ 284 *et seq.,* 913 *et seq.*

Wife's right of action for loss of consortium. 36 ALR3d 900.

See also the annotations in the Index to Annotations under Occupational Safety and Health; Products Liability; Safety Codes and Standards.

accrued is a question of fact that is best left for the fact finder to decide following the termination of discovery proceedings.

Reversed and remanded.

DANHOF, C.J., dissented. He would hold that where, as in this case, the alleged injury occurs before marriage, recovery for loss of consortium should not be allowed. He would further hold that, assuming that the rule which governs accrual of Mr. Furby's cause of action should also control the viability of Mrs. Furby's loss of consortium claim, an asbestos-related product liability claim accrues at the time of the wrongful act, i.e., exposure to asbestos. He would affirm.

### OPINION OF THE COURT

1. MOTIONS AND ORDERS — SUMMARY DISPOSITION — FAILURE TO STATE A CLAIM — COURT RULES.

   A motion for summary disposition on the ground that the opposing party has failed to state a claim upon which relief can be granted challenges the legal adequacy of the pleadings; the test which the court should apply is whether the claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover (MCR 2.116[C][8], formerly GCR 1963, 117.2[1]).

2. TORTS — LOSS OF CONSORTIUM.

   Loss of consortium includes loss of society, companionship, service, and all other incidents of the marriage relationship.

3. TORTS — LOSS OF CONSORTIUM — ACTIONS.

   A claim for loss of consortium is derivative and recovery in an action for loss of consortium is contingent upon the injured person's recovery of damages.

4. PRODUCTS LIABILITY — LOSS OF CONSORTIUM — CAUSES OF ACTION — ACCRUAL OF CAUSE OF ACTION.

   A claim for loss of consortium derived from an underlying action for product liability does not accrue until such time as the injured spouse discovers or, through the exercise of reasonable diligence, should have discovered that he had a possible cause of action, where the alleged injury is related to a latent occupational disease such as asbestosis.

### DISSENT BY DANHOF, C.J.

5. TORTS — LOSS OF CONSORTIUM — ACTIONS.

   *The loss of consortium claim is derived from the marital relationship and the rights arising from it; recovery for loss of consor-*

*tium is generally not allowed where the injury occurs before marriage.*

6. PRODUCTS LIABILITY — ACCRUAL OF CAUSE OF ACTION — LOSS OF CONSORTIUM.

*A cause of action for product liability accrues at the time the wrong upon which the claim is based is done; a claim for loss of consortium derived from such cause of action similarly accrues at that time.*

*Michael B. Serling, P.C.* (by *Michael B. Serling* and *Michelle E. Areeda*), for plaintiffs.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *Robert D. Brignall*), for defendants.

Before: DANHOF, C.J., and HOOD and SULLIVAN, JJ.

SULLIVAN, J. On January 17, 1984, plaintiffs filed a complaint against defendants in this asbestos-related personal injury action. Included in this complaint was a claim filed by plaintiff Shelbie Furby for loss of consortium. Defendant Raymark Industries, Inc., subsequently moved for summary disposition only as to the loss of consortium claim. The motion was granted by an order for partial summary disposition, entered on June 3, 1985. On June 21, 1985, the trial court entered an order modifying the June 3, 1985, order to reflect that it applied to all defendants. Plaintiffs appeal as of right.

Plaintiff Kenneth Furby, Shelbie's husband, was employed in the insulation industry from 1947 until 1968. During this period, he was repeatedly exposed to asbestos, asbestos dust and fibers. In 1980, Kenneth Furby was hospitalized for lung congestion and fatigue. Dr. Irving Selikoff, after viewing Mr. Furby's x-rays, wrote the following

opinion in a letter to Mr. Furby dated June 16, 1981:

> There is clear evidence of scarring of the pleura and left diaphragm, with calcification. This is characteristically the result of previous asbestos exposure.
>
> However, these scars were limited in extent and were not accompanied by any of the more serious changes that we occasionally see and that would give us current concern.

In their answer to defendants' interrogatories, plaintiffs stated "plaintiff [Kenneth Furby] was aware of his respiratory disorders in general terms, but such conditions were not attributed to exposure to asbestos until June of 1981," the date of Dr. Selikoff's letter.

Plaintiffs were married on October 11, 1981. In September, 1983, Dr. Jeffrey Parker diagnosed Mr. Furby as having asbestosis, and stated that the condition was related to his occupational exposure to asbestos.

In their complaint, plaintiffs alleged negligence, breach of warranty, and strict liability, and further claimed that Kenneth Furby's injuries were caused by products containing asbestos which he used in the course of his work. Additionally, as stated, Shelbie Furby filed her claim for loss of consortium. Raymark brought its motion to dismiss the loss of consortium claim on the basis that the plaintiffs did not marry until after Mr. Furby became exposed to asbestos and learned that he had an asbestos-related injury. The circuit court granted the motion, holding that the spouse of an individual who has sustained asbestos-related injuries may not sue for loss of consortium unless he or she was married to the victim at the time he

first became exposed to or became aware of the possibility of an asbestos-related disease.

Defendant Raymark brought its motion for partial summary disposition on the ground that Ms. Furby failed to state a claim upon which relief can be granted pursuant to MCR 2.116(C)(8), formerly GCR 1963, 117.2(1).

> A summary judgment under GCR 1963, 117.2(1) challenges the legal adequacy of the pleadings. The test which the court should apply is whether plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recover. *Abel v Eli Lilly & Co,* 418 Mich 311, 323-324; 343 NW2d 164 (1984), reh den 419 Mich 1201, 1214 (1984), *cert den* — US —; 105 S Ct 123; 83 L Ed 2d 65 (1984). [*Jackson Dist Library v Jackson County #1,* 146 Mich App 392, 400; 380 NW2d 112 (1985).]

In *Oldani v Lieberman,* 144 Mich App 642, 645; 375 NW2d 778 (1985), this Court stated as follows:

> Michigan case law permits a husband or wife to recover damages for loss of consortium when his or her spouse is injured by the negligence of a third party. Loss of consortium includes conjugal fellowship, companionship, services and all other incidents of the marriage relationship.
>
> In Michigan, a claim for loss of consortium is derivative and recovery in an action for loss of consortium is contingent upon the injured person's recovery of damages. In *Rusinek v Schultz, Snyder & Steele Lumber Co,* [411 Mich 502, 508; 309 NW2d 163 (1981), reh den 412 Mich 1101 (1981)] the Supreme Court said:
>
> "Since it is derived from the injured spouse's action, a claim of loss of consortium does not create a new case nor does it contribute significantly to the problems the act was intended to alleviate."

Michigan case law does not state whether a plaintiff may recover for loss of consortium when she was not married to her husband at the time of his injury. However, in *Chisea v Rowe,* 486 F Supp 236 (WD Mich, 1980), the court, applying Michigan substantive law, dismissed a wife's loss of consortium claim when her husband's injury occurred while they were engaged. The court stated:

When a fiancée decides to go forward with the marriage after injury and disability strikes her betrothed she must recognize the extent of assistance and comfort that he will be able to provide and will in turn require. In doing so she waives her rights to another level or form of conjugal fellowship which might have been obtained had she married another. In addition policy dictates that there be some limitation to this form of liability. Although plaintiffs were living together and engaged to be married when an injury to the female plaintiff occurred, the Court in *Tong v Jocson,* 76 Cal App 3d 603, 142 Cal Rptr 726 (1977), denied recovery. There the court approvingly cited other California cases for the proposition that:

. . . social policy must at some point intervene to delimit liability . . . . Not every loss can be made compensable in money damages, and legal causation must terminate somewhere . . . *Rodriguez* [*v Bethlehem Steel Corp,* 12 Cal 3d 382, 115 Cal Rptr 765, 525 P2d 669 (1974)], *supra,* repudiates "an, indefinite extension of liability for loss of consortium to all foreseeable relationships." [*Tong, id.,* at 727. Citations omitted.]

This Court is of the opinion that a Michigan state court presented with the issue of whether loss of consortium should be extended to a party betrothed to another would find the above reasoning persuasive and would follow the general rule denying such an extension, and accordingly this Court finds the Defendants' Motions for Dismissal

as to Count II ought to be granted. [486 F Supp 238-239.]

Generally, other federal and state courts have denied recovery for loss of consortium where the injury occurs before the marriage:

Frequently observing that the right of consortium grows out of the marital relationship, these courts have refused to allow recovery for loss of consortium on the ground that the respective spouses were not married at the time of the injury.[1]

[1] See Restatement of Torts 2d Sec 693(h) which requires a valid marriage for a spouse to maintain an action against one who inflicts injury on the other spouse. [5 ALR4th, 301.]

A glimmer to the contrary appears in *Wagner v International Harvester Co,* 455 F Supp 168 (D Minn, 1978), where the court refused to allow recovery for loss of consortium when the plaintiff did not know his wife at the time of her injury. The court stated, "He should not be entitled to marry a cause of action." But the court stated further that the general rule may yield to special circumstances. 455 F Supp 169.

Here, the plaintiffs married in 1981, thirteen years after the last date Mr. Furby sustained asbestos exposure. But, plaintiffs argue that they were married before Mr. Furby's injury manifested physical symptoms to allow a firm diagnosis of asbestosis, and that it was not until such a diagnosis was made that his cause of action accrued. Defendants argued, and the trial court agreed, that Mr. Furby was injured either on the date he was exposed to the asbestos, or in June, 1981, when Dr. Selikoff advised him that he had a possible asbestos-related disease.

In the case of *Stager v Schneider,* 494 A2d 1307 (DC App, 1985), the plaintiffs were married on June 2, 1980. In December of that year, Mrs. Stager, during the course of a physical examination, was diagnosed as having adenocarcinoma. Mrs. Stager had taken an x-ray prior to the marriage which indicated the same problem; however, her doctor did not inform either her or her husband of this fact. The court concluded that since Patrick Stager was lawfully married to Dixie Stager at the time they were informed of the nature of the injury, he had a justiciable claim for loss of consortium.

It is true that the courts of this country have, in the majority, held that the evidence of a lawful marital relationship at the time of the tortious conduct and resultant injury to one spouse is required before the other can bring an action for loss of consortium. See *Sawyer v Bailey,* 413 A2d 165 (Me, 1980); *Tremblay v Carter,* 390 So 2d 816 (Fla App, 1980); *Angelet v Shivar,* 602 SW2d 185 (Ky App, 1980). Courts generally agree that a person should not be permitted to marry a cause of action. *Wagner, supra.* One takes a spouse in their existing state of health, and thus assumes the risk of any deprivation resulting from prior disability. As the court in *Stager, supra,* p 1316, said:

> We have no hesitance in expressing our agreement with these courts where the issue is the right to claim consortium where the tortious conduct *and fact of injury* were both known or knowable prior to that marriage. [Emphasis in original.]

However, implicit in *Stager* was the holding that the underlying cause of action did not accrue until the results of the earlier x-rays were known to the respective parties. 494 A2d 1316.

Unfortunately, there is currently a split of authority within this Court on the issue of when a cause of action based on products liability accrues in this state. We find that the underlying cause of action here did not accrue until Mr. Furby either discovered or, through the exercise of reasonable diligence, should have discovered that he had a possible cause of action. *Bonney v The Upjohn Co,* 129 Mich App 18, 34-35; 342 NW2d 551 (1982), lv den 419 Mich 868 (1984), *Cullender v BASF Wyandotte Corp,* 146 Mich App 423, 427; 381 NW2d 737 (1985).

In so holding, we reject the majority opinion in *Larson v Johns-Manville Sales Corp,* 140 Mich App 254; 365 NW2d 194 (1985), lv gtd 422 Mich 975 (1985), which, for purposes of calculating the running of the period of limitation, declined to adopt this "discovery" rule of accrual to a number of asbestos-related products liability claims similar to the instant claim and, instead, strictly construed the general accrual statute, MCL 600.5827; MSA 27A.5827, as requiring a finding that accrual occurred at the time of the wrongful act. 140 Mich App 267.

We believe that application of the "discovery" rule to the instant situation would not thwart the policies supporting the general rule limiting causes of action for loss of consortium to an individual who is married at the time of the injury to his or her spouse. In cases where an individual marries someone who has been exposed to asbestos but has not yet been diagnosed as having asbestosis or a related disease, such an individual did not enter into the marital relationship with knowledge of the nature of his or her spouse's injuries and potential causes of action. Thus, it would be unreasonable to conclude that, with regard to such an exposed individual and his spouse, a cause of

action already accrued when, due to the extreme latent nature of asbestos-related illnesses, neither spouse did in fact know and could not, in the exercise of reasonable care and diligence, know of the nature and cause of the disease.

Indeed, one cannot say for certain that Shelbie Furby married a cause of action. Plaintiffs were married in October of 1981. Prior to the marriage, in June, 1981, Mr. Furby received a medical opinion stating that he possessed symptoms characteristic of previous asbestos exposure, but that such symptoms were not a cause of "current concern." It was not until almost two years after the marriage, in September, 1983, that Mr. Furby was diagnosed as having asbestosis and learned that the condition was related to his occupational exposure to asbestos. It cannot be stated as a matter of law that the June, 1981, medical opinion gave Mr. Furby sufficient notice that he had a possible cause of action. Indeed, his underlying claim had not yet accrued because his "potential injury was at that time merely speculative and incapable of proof to a reasonable certainty." 140 Mich App 270 (J. R. ERNST, J., dissenting in part).

Since the time the underlying cause of action accrued is a question of fact that is best left for the fact finder to decide following the termination of discovery, we reverse the order of partial summary disposition and remand the matter to the trial court for a factual determination of this issue and for other further proceedings not inconsistent with this opinion.

Reversed and remanded.

HOOD, J., concurred.

DANHOF, C.J., *(dissenting)*. I respectfully dissent.

I agree with the circuit court that plaintiff Kenneth Furby sustained injury either at the time he was exposed to asbestos or no later than June of 1981. Dr. Selikoff's letter of June, 1981, plainly communicated the fact of injury. I conclude that the injury occurred well before the plaintiffs' marriage in October of 1981.

The loss of consortium claim is derived from the marital relationship and the rights arising from it. *Chisea v Rowe*, 486 F Supp 236, 238 (WD Mich, 1980). See, also, Prosser & Keeton, Torts (5th ed), § 125, p 932. Where the injury occurs before marriage, recovery for loss of consortium is generally not allowed. *Sawyer v Bailey*, 413 A2d 165 (Me, 1980); *Tremblay v Carter*, 390 So 2d 816 (Fla App, 1980). These principles are fairly easy to apply to cases in which the claims for liability and loss of consortium arise as a result of an accident. Their application becomes more difficult where, as here, the claims arise as a result of an occupational disease.

The majority follows *Stager v Schneider*, 494 A2d 1307 (DC App, 1985), and applies the discovery rule in order to determine the viability of the consortium claim. I am not completely convinced that the rule which governs accrual of Mr. Furby's cause of action should also control the viability of Mrs. Furby's loss of consortium claim. Assuming that it does, I would follow the majority view expressed in *Larson v Johns-Manville Sales Corp*, 140 Mich App 254; 365 NW2d 194 (1985), lv gtd 422 Mich 975 (1985), that an asbestos-related product liability claim accrues at the time of the wrongful act, i.e., exposure to asbestos.

I would affirm the decision of the circuit court.