KATHY MONROE, Plaintiff-Appellant, v. TRINITY HOSPITAL-ADVOCATE, d/b/a Advocate Health and Hospital Corporation, *et al.*, Defendants-Appellees (Alvin Monroe, Plaintiff).

First District (2nd Division)   No. 1—02—2676

Opinion filed January 27, 2004, *nunc pro tunc* December 9, 2003.

Anthony E. Blumberg, of Blumberg & Dore, of Chicago, for appellant.

Cassiday, Schade & Gloor, of Chicago (Donald F. Ivansek and James W. Kopriva, of counsel), for appellee Trinity Hospital-Advocate.

Brian A. Rocca, of Pretzel & Stouffer, Chtrd., of Chicago (Robert Marc Chemers and Scott L. Howie, of counsel), for appellee Nasrullah M. Basha.

Wildman, Harrold, Allen & Dixon, of Chicago (David A. Kanter, Martha D. Owens Kanter, and Ethan A. McKittrick, of counsel), for appellee Greta A. Bell and National Emergency Services, Inc.

JUSTICE CAHILL delivered the opinion of the court:

Plaintiff Kathy Monroe appeals the trial court order dismissing her loss of consortium action against defendants Advocate Trinity Hospital, Dr. Nasrullah M. Basha, Dr. Vivek Sachdev, Dr. Greta A. Bell and National Emergency Services Midwest, Inc. We affirm.

Alvin and Kathy Monroe were married on April 27, 1999. Shortly before their marriage, Alvin sought treatment for priapism, a condition associated with an abnormal, painful and continued erection of the penis. Alvin was admitted to Advocate Trinity Hospital, where he underwent surgery to relieve his erection. Dr. Basha allegedly assured

Kathy that the surgery was a success and Alvin's penis would "oper-ate normally" after the swelling from the surgery went away. The couple married despite Alvin's medical condition and recovery. Once the swelling stopped, Kathy and Alvin attempted to consummate their marriage. The attempt was unsuccessful because Alvin could not obtain an erection, nor has he been able to obtain an erection since the surgery.

Alvin and Kathy filed a four-count complaint against defendants. The first three counts alleged that defendants' negligence resulted in personal injuries to Alvin. The fourth count was brought by Kathy and alleged loss of consortium. The trial court granted defendants' motion to dismiss Kathy's loss of consortium claim on the ground that the couple was not married at the time the injury occurred.

■ We review *de novo* the trial court's order dismissing Kathy's claim under section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2000)). See *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383, 687 N.E.2d 1042 (1997).

Kathy argues on appeal that she should be permitted to maintain a loss of consortium action despite the fact that the act causing Alvin's injury occurred before the marriage because the injury was not discovered until after the marriage. Kathy's argument relies on two basic premises: (1) a consortium claim is a derivative action predicated on a directly injured spouse's cause of action for personal injury; and (2) the discovery rule applicable to medical malpractice actions extends to loss of consortium claims arising out of such actions (see 735 ILCS 5/13—203 (West 2000)). Kathy asks that we join these two principles and apply the discovery rule to save a loss of consortium action where the injury to the spouse occurred before the marriage but was not known until after the marriage. Kathy cites *Furby v. Raymark Industries, Inc.*, 154 Mich. App. 339, 397 N.W.2d 303 (1986), where the Michigan Court of Appeals did just that.

The facts in *Furby* are similar to the facts here. Plaintiff Kenneth Furby filed an asbestos-related personal injury action. *Furby*, 154 Mich. App. at 341, 397 N.W.2d at 303. Included in the complaint was a claim by Kenneth's wife, Shelbie, for loss of consortium. *Furby*, 154 Mich. App. at 341, 397 N.W.2d at 303. Shelbie's claim was dismissed on the ground that Kenneth's exposure to the asbestos occurred before the marriage. *Furby*, 154 Mich. App. at 342-43, 397 N.W.2d at 304. Shelbie argued on appeal that her husband's cause of action did not accrue until after the marriage when the injury became known. *Furby*, 154 Mich. App. at 345, 397 N.W.2d at 305. Due to the derivative nature of a loss of consortium action, Shelbie maintained that her consortium claim also accrued after the marriage and should have been allowed.

*Furby*, 154 Mich. App. at 345, 397 N.W.2d at 305. The court agreed and applied the discovery rule to save Shelbie's loss of consortium claim. *Furby*, 154 Mich. App. at 348, 397 N.W.2d at 306-07.

■ *Furby* fails to take into account the unique nature of a claim for loss of consortium or the purpose of the discovery rule. As the dissent in *Furby* aptly points out, a loss of consortium claim evolves out of the marital relationship and the rights arising from that relationship. *Furby*, 154 Mich. App. at 349, 397 N.W.2d at 307 (Danhof, C.J., dissenting). Although a loss of consortium action is necessarily predicated on the claim of a directly injured spouse in that it arises from the same operative facts, it is legally separate and distinct from the directly injured spouse's cause of action. See *Sostock v. Reiss*, 92 Ill. App. 3d 200, 206, 415 N.E.2d 1094 (1980). The basis for recovery for loss of consortium is interference with the continuance of a healthy and happy marriage and injury to the conjugal relation. *Blagg v. Illinois F.W.D. Truck & Equipment Co.*, 143 Ill. 2d 188, 200, 572 N.E.2d 290 (1991).

In *Sostock*, 92 Ill. App. 3d 200, 415 N.E.2d 1094, we held that a husband cannot maintain a cause of action for loss of consortium where the injury to his wife occurred shortly before the couple's marriage. We analyzed the plaintiff's loss of consortium claim under basic negligence principles. *Sostock*, 92 Ill. App. 3d at 206. Recognizing that consortium involves the rights and privileges inherent in the marital relationship, we held that where no marital relationship exists, a defendant cannot owe a duty to refrain from interfering in the relationship. *Sostock*, 92 Ill. App. 3d at 206. Where there is no duty, there can be no recovery in a tort for negligence. *Sostock*, 92 Ill. App. 3d at 206.

■ The same result is reached here. Kathy alleged that as a "direct and proximate result of [defendants'] conduct, *** Kathy has lost the service of her husband, and she has been deprived of his affection, society, companionship and consortium." At the time of defendants' alleged negligent conduct of which Kathy complains, there was no marital relationship. Kathy's complaint fails to establish a duty owed to her by defendants.

Kathy attempts to maneuver around this result by narrowing the issue to whether her cause of action accrued before or after the marriage. However, the postmarital discovery of a premarital injury cannot create a cause of action for loss of consortium where none existed in the first place.

Although we have not yet been presented with this exact issue, we are persuaded by other jurisdictions that have rejected *Furby*'s application of the discovery rule to save otherwise legally insufficient

loss of consortium actions. See *Zwicker v. Altamont Emergency Room Physicians Medical Group*, 98 Cal. App. 4th 26, 118 Cal. Rptr. 2d 912 (2002); *Fullerton v. Hospital Corp. of America*, 660 So. 2d 389 (Fla. App. 1995); *Doe v. Cherwitz*, 518 N.W.2d 362 (Iowa 1994). As the court in *Doe* pointed out, the discovery rule was adopted to avoid the harsh consequences of a statute of limitations by postponing the starting of the period until the injured party knew or should have known of his injury. *Doe*, 518 N.W.2d at 365; see also *Koelle v. Zwiren*, 284 Ill. App. 3d 778, 786, 672 N.E.2d 868 (1996). The discovery rule anticipates that the claimant had a valid cause of action within the period of limitations but was unaware of it. *Doe*, 518 N.W.2d at 365. Here, there was no valid cause of action at the time the injury occurred because there was no marital relationship. The discovery rule was not intended to cover such circumstances. Simply stated, "[t]he *** discovery rule has no place in determining whether a tort claim *ever arose in the first place*." (Emphasis in original.) *Zwicker*, 98 Cal. App. 4th at 34, 118 Cal. Rptr. 2d at 918.

Nor do we have authority to expand the scope of the discovery rule to save Kathy's cause of action. "The responsibility for the wisdom or justice of legislation rests with the legislature, and courts may not rewrite statutes to make them consistent with the court's idea of orderliness and public policy." *People v. Wright*, 194 Ill. 2d 1, 29, 740 N.E.2d 755 (2000). The discovery rule applicable to medical malpractice actions provides that a claimant must bring his cause of action within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the injury. 735 ILCS 5/13—212 (West 2000). The legislature has deemed it appropriate to extend the discovery rule to loss of consortium actions to provide that such actions

> "shall be commenced within the same period of time as actions for damages for injury to such other person. Where the time in which the cause of action of the injured person whose injuries give rise to the cause of action brought under this Section is tolled or otherwise extended by [section 13—212 (discovery rule)], the time in which the cause of action must be brought under this Section is also tolled or extended to coincide with the period of time in which the injured person must commence his or her cause of action." 735 ILCS 5/13—203 (West 2000).

The discovery rule applies to the time in which a loss of consortium action must be filed. There is no indication that the legislature intended that this rule apply to permit loss of consortium actions where the underlying injury occurred before the marriage but was not known until after the marriage.

The judgment of the circuit court is affirmed.

Affirmed.

BURKE and GARCIA, JJ., concur.