Corine PITZER, Administrator of
the Estate of Brian Pitzer,
Deceased, Plaintiff,

v.

CITY OF EAST PEORIA, ILLINOIS, an
Illinois Local Government Entity, and
Chad LaCost, an East Peoria Police
Officer in his Individual Capacity, Defendants.

No. 08–cv–1120.

United States District Court,
C.D. Illinois,
Peoria Division.

Feb. 11, 2009.

G. Douglas Stephens, Stephens Fiddes McGill & Association, Richard L. Steagall, Nicoara & Steagall, Peoria, IL, for Plaintiff.

Peter R. Jennetten, Quinn Johnston Henderson & Pretorius, Peoria, IL, for Defendants.

## OPINION & ORDER

JOE BILLY McDADE, District Judge.

Before the Court is Defendants' Motion to Dismiss or Strike, filed on July 1, 2008 (Doc. 9). Plaintiff responded in opposition to the motion on August 15, 2008 (Doc. 16). For the reasons stated below, the motion is GRANTED, in part, and DENIED, in part.

## BACKGROUND

This case involves the tragic death of thirty-two year old Brian Pitzer. Mr. Pitzer's death resulted from an incident with police on May 24, 2007. At approximately 3:30 p.m. on that date, Brian Pitzer's wife, Corine Pitzer, arrived at the couple's home in Creve Coeur, Illinois, to find her husband intoxicated and holding a shotgun between his legs. (Compl. ¶ 7). The Complaint indicates that Mr. Pitzer was suffering from severe depression and that he was taking anti-depressant medication at the time. Corine attempted to coax Brian into putting down the shotgun, but she was unsuccessful. According to the Complaint, Corine then left the house to pick up the couple's daughter from a dance recital. (Compl. ¶ 7).

After picking up her daughter, Corine decided to drive to her sister's residence, which was also in Creve Coeur. At some point before she arrived at her sister's house, Corine contacted Jeff Hall, an auxiliary East Peoria police officer. Mr. Hall was a friend of Brian Pitzer. When Corine arrived at her sister's house, Mr. Hall was there, along with Creve Coeur police officers. The police officers instructed Corine to remain at her sister's house and to notify them if Brian called. (Compl. ¶ 8).

Meanwhile, Creve Coeur police officers went to Brian Pitzer's residence and secured the immediate area. The officers attempted to talk Brian out of the house, unarmed. When this attempt was unsuccessful, Captain Mike Button called in the Central Illinois Emergency Response Team (CIERT), which is an emergency crisis unit composed of police officers from various local government entities in the Greater Peoria, Illinois Area. (Compl. ¶¶ 9–10). Chad LaCost, who is named as a Defendant in this case, was a member of the CIERT unit that responded to the

May 24, 2007 call.[1] The CIERT unit arrived at the Pitzer residence and took command of the scene, in conjunction with Creve Coeur police officers. For the next five hours, Brian Pitzer remained inside the house as officers tried to convince him to come outside, unarmed. Once or twice during this five-hour period, Brian came outside with a shotgun over his arm, walked around, spoke with police, and then returned to the residence. (Compl. ¶ 12).

At some point during this time, Brian Pitzer spoke with his father, Thomas Pitzer. Brian's father and his mother, Neva Pitzer, lived in Monroe City, Missouri. During their conversation, Brian apparently told his father that he would give him the shotgun if his father came to the scene. According to the Complaint, in response to Brian's comments, his parents drove from Monroe City to the City of Pekin, Illinois. (Compl. ¶¶ 13–14).[2]

The Complaint states that, while his parents were in Pekin, Brian exited his house with the shotgun on his arm, pointed upward. While Brian was outside, three members of the CIERT unit, along with a K–9 dog, entered his residence. After the officers and the K–9 entered the house, the Pitzers' dog, a terrier, ran out of the house and toward the side of the house. Brian, who was apparently still outside and armed with the shotgun, then walked toward the side of his house in the direction of the terrier. (Compl. ¶ 14).

While Brian was walking toward the side of the house, a K–9 dog attacked the Pitzers' terrier. The Complaint seems to indicate that, at about the moment of the dog attack, an officer shot Brian in the arm with a tazer, which caused Brian to drop the shotgun near the bottom of a parked pickup truck. (Compl. ¶ 15). Then, according to the Complaint, while Brian was unarmed and without warning, Officer LaCost of the CIERT fired two bullets into Brian's back. (Compl. ¶¶ 16, 19). Subsequently, emergency medical technicians transported Brian to St. Francis Medical Center in Peoria, Illinois. Brian was pronounced dead at 12:03 a.m. on May 25, 2007, from multiple gunshot wounds. (Compl. ¶ 17).

The Complaint indicates that Brian Pitzer is survived by his wife Corine and his two minor children. (Compl. ¶¶ 24–25). The Complaint also suggests that, at the time of filing, Brian's parents, Thomas and Neva, were still living. Corine Pitzer was appointed Administrator of the Estate of Brian Pitzer on May 21, 2008. (Ex. 1 to Compl.).

On May 27, 2008, in her capacity as administrator of Brian's estate, Corine Pitzer ("Plaintiff") brought suit in federal court against the City of East Peoria and Chad LaCost, in his individual capacity ("Defendants"). (Doc. 1). The instant Complaint alleges that Officer LaCost, acting under color of state law, violated Brian Pitzer's Fourth Amendment right, pursuant to 42 U.S.C. § 1983, to be free from unreasonable search and seizure. The Complaint also alleges common law battery against Officer LaCost and against the City of East Peoria under a respondeat superior theory. (Compl. ¶¶ 18–22). Plaintiff seeks damages for Brian's loss of life, for the pain and suffering Brian experienced before his death at 12:03 a.m. on May 25, 2007,[3] and for medical and funeral

---

1. Mr. LaCost was employed by the East Peoria Police Department at the time of the incident. (Compl. ¶ 11).

2. The Complaint does not clarify why Brian's parents drove to Pekin instead of to Creve Coeur.

3. In one paragraph, the Complaint states that Brian died at 12:03 a.m. (Compl. ¶ 17). In

expenses. (Compl. ¶ 23). The Complaint prays for damages to compensate Brian's wife and minor children for their loss of Brian's society, companionship, and annual income. (Compl. ¶¶ 24–25). The Complaint also prays for damages to compensate Brian's parents for their loss of Brian's society and companionship. (Compl. ¶ 25). On July 1, 2008, Defendants filed a motion to dismiss or strike the Complaint under Federal Rule of Civil Procedure 12. Defendants' motion boils down to a request to strike the damages that Plaintiff has specified in Paragraphs 24 and 25 of the Complaint.

## LEGAL STANDARD

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must view the complaint in the light most favorable to the plaintiff, and the complaint's well-pleaded factual allegations must be accepted as true. *Williams v. Ramos,* 71 F.3d 1246, 1250 (7th Cir.1995). Therefore, a complaint can only be dismissed if a plaintiff cannot prove any set of facts upon which relief can be granted. *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia,* 73 F.3d 1423, 1429–30 (7th Cir.1996). However, the Court is not bound by a plaintiff's legal conclusions. *Nelson v. Monroe Reg'l Med. Ctr.,* 925 F.2d 1555, 1559 (7th Cir.1991). The purpose of a Rule 12(b)(6) motion is to question the availability of a legal formula justifying relief on the alleged facts. *Maple Lanes, Inc. v. Messer,* 186 F.3d 823, 824–25 (7th Cir.1999). Under Fed.R.Civ.P. 12(f), the Court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

## ANALYSIS

■ With respect to Plaintiff's federal claim, Defendants' only argument in support of their Rule 12 motion is that a decedent's family members have no right to recover for loss of society, companionship, or support under 42 U.S.C. § 1983. Defendants cite only one case, *Russ v. Watts,* to carry this proposition. 414 F.3d 783, 791 (7th Cir.2005). In *Russ,* the parents of an adult who was fatally wounded by a police officer, following a car chase, brought suit in federal court to recover for the shooting officer's violation of their individual due process rights to associate with their son. The issue before the Court of Appeals in *Russ* was a narrow one: "whether the United States Constitution, through the federal civil rights statute 42 U.S.C. § 1983, provide[d] Russ's parents with a cause of action for the loss of the society and companionship of their son." 414 F.3d at 783. The Court of Appeals held that there is no "constitutional right to recover for the loss of the companionship of an adult child when that relationship is terminated as an incidental result of state action[,]" overruling a previous holding in *Bell v. City of Milwaukee,* 746 F.2d 1205 (7th Cir.1984).[4] *Russ,* 414 F.3d at 791.

*Russ* is not directly on point in the present case because Brian Pitzer's parents have not asserted an independent

another paragraph, it states that he died at 12:03 p.m. (Compl. ¶ 23).

4. In *Bell,* the siblings of a man who had been fatally wounded by a police officer brought suit in federal court, alleging that the shooting officer's actions deprived them of their constitutional rights, under the Fourteenth Amendment, to associate with their brother. The estate of the victim's father also brought suit, alleging the same type of constitutional deprivation. 746 F.2d at 1224. The Court of Appeals recognized the availability of a section 1983 cause of action for the victim's father but not for the victim's siblings. *Id.* at 1243–47.

cause of action, based in due process, for the loss of their son's companionship. Brian's parents are not parties to this lawsuit; the only Plaintiff in this suit is Corine Pitzer, in her capacity as administrator of Brian's estate. In other words, this suit is based on Brian Pitzer's own cause of action, not on any cause of action asserted by his parents. Moreover, *Russ* does not address whether Brian Pitzer's wife and minor children could recover in a section 1983 action for their loss of Brian's consortium, society, and companionship.

■ The single federal claim that Plaintiff has alleged in this lawsuit is that Officer LaCost violated Brian Pitzer's right, under the Fourth Amendment to the United States Constitution (made applicable to the states through incorporation), to be free from an unreasonable search and seizure. (Compl. ¶¶ 18–19). The instant Rule 12 motion seeks to limit the types of damages that Brian Pitzer's estate can recover if the estate ultimately establishes liability. Section 1983 does not address what types of damages are available to the estate of a deceased claimant whose life was terminated by unconstitutional state action. *See Bass v. Wallenstein,* 769 F.2d 1173, 1188 (7th Cir.1985). However, it is well established in our Circuit that a federal court may look to state law, pursuant to 42 U.S.C. § 1988, to answer this question of damages. *See id.* (citing *Robertson v. Wegmann,* 436 U.S. 584, 587–90, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978)).

■] In *Spence v. Staras,* our Court of Appeals held that, in a federal civil rights action where the claimant is deceased, the claimant's cause of action survives his death, for the benefit of his estate, if applicable state law allows for survival of the action. 507 F.2d 554, 557 (7th Cir.1974). In Illinois, the Survival Act, 755 Ill. Comp. Stat. 5/27–6, allows the decedent's estate to recover damages for the conscious pain and suffering endured, and the medical expenses incurred, by the decedent before his death. Additionally, the Illinois Wrongful Death Act, 740 Ill. Comp. Stat. 180/1 *et seq.,* allows the decedent's estate to recover damages for "pecuniary injuries" incurred by the decedent's surviving spouse and next of kin as a result of the decedent's death. *Spence,* 507 F.2d at 557. In Illinois, a surviving spouse's loss of consortium is compensable as a "pecuniary injury" under the Wrongful Death Act. *See Elliott v. Willis,* 92 Ill.2d 530, 65 Ill.Dec. 852, 442 N.E.2d 163, 167–68 (1982); *see also McClain v. Owens–Corning Fiberglas Corp.,* 139 F.3d 1124, 1129 (7th Cir.1998).[5] The losses of society and companionship experienced by the decedent's minor children also constitute "pecuniary injury" under the Act. *See Drews v. Gobel Freight Lines, Inc.,* 144 Ill.2d 84, 161 Ill.Dec. 324, 578 N.E.2d 970, 977 (1991); *see also Holston v. Sisters of the Third Order of St. Francis,* 247 Ill.App.3d 985, 187 Ill.Dec. 743, 618 N.E.2d 334, 348 (Ill.App.Ct.1993).[6] Therefore, it is possible that Brian Pitzer's estate could recover damages to compensate Brian's wife and minor children for

---

5. Under Illinois law, "consortium" includes society, guidance, companionship, felicity, and sexual relations. *McClain,* 139 F.3d at 1129. Illinois Pattern Civil Jury Instruction No. 31.11 (2008 ed.) defines society as "the mutual benefits that each family member receives from the other's continued existence, including love, affection, care, attention, companionship, comfort, guidance, and protection."

6. A child's "pecuniary loss" resulting from the wrongful death of a parent may include loss of society, companionship, instruction, moral training, and superintendence of education. *See Clarke v. Medley Moving & Storage, Inc.,* 381 Ill.App.3d 82, 319 Ill.Dec. 125, 885 N.E.2d 396, 404 (Ill.App.Ct.2008); *Holston,* 187 Ill.Dec. 743, 618 N.E.2d at 341; *see also* Ill. Pattern Jury Instr.—Civ. 31.04 (2008 ed.).

their loss of Brian's consortium, companionship, and society, so long as these types of recoveries do not offend federal law. *See Bass,* 769 F.2d at 1188 ("[T]he most closely analogous state law may fill the vacuum only if it is consistent with the meaning and purpose of constitutional and federal statutory law.")

Defendants make no attempt to persuade this Court as to why the types of recovery referenced above would conflict with federal law. Giving Defendants the benefit of the doubt, they could be pointing to *Russ* as an indication that it would offend federal law to allow Brian Pitzer's estate to recover damages, under section 1983, to compensate Brian's wife and children for their loss of Brian's consortium, companionship, and society. If that is Defendants' argument, the Court disagrees. The Court of Appeals' decisions in *Russ* and similar cases, such as *Niehus v. Liberio,* 973 F.2d 526, 533–34 (7th Cir.1992) (rejecting the argument that a loss of spousal consortium equates to a deprivation of liberty under the Constitution), have focused on limiting the "tangential" federal causes of action available to the family members of a victim who experiences an underlying constitutional deprivation. The Court of Appeals' primary concern in both *Russ* and *Niehus* was the unwarranted expansion of the concept of substantive due process under the Fourteenth Amendment. In this case, that concern is not at play because no one is asking this Court to recognize a constitutional cause of action for Brian Pitzer's wife or minor children.

Further, this Court's resort to state law to answer the question of section 1983 damages in the present case does not complicate the matter because, in Illinois, an administrator's cause of action for wrongful death is derived from the decedent's own cause of action. *See Anderson v. Romero,* 42 F.3d 1121, 1124 (7th Cir.1994) ("[W]hen a claim survives the death of the plaintiff, the claim belongs to the estate, not to the plaintiff's next of kin."); *see also Williams v. Manchester,* 228 Ill.2d 404, 320 Ill.Dec. 784, 888 N.E.2d 1, 11–12 (2008). Federal courts have recognized the distinction between (i) allowing a next of kin survivor to pursue an independent section 1983 cause of action for her own loss of a decedent's society as the result of state action and (ii) allowing a decedent's estate to recover, under section 1983, for the benefit of his immediate surviving family.

For example, in *Robertson v. Hecksel,* the Eleventh Circuit Court of Appeals rejected a plaintiff's section 1983 claim based on the alleged deprivation of the plaintiff's own Fourteenth Amendment right to a relationship with her adult son. 420 F.3d 1254, 1261 (11th Cir.2005). The plaintiff sought damages for loss of support and companionship. In rejecting the proposition that the plaintiff had a constitutional right to the companionship of her adult son, the *Hecksel* Court distinguished the case from prior cases where federal circuit courts had incorporated a state's wrongful death statute to compensate the survivors of a decedent who died as the result of a constitutional violation.[7]

**7.** The *Hecksel* Court distinguished the cases of *Brazier v. Cherry,* 293 F.2d 401 (5th Cir.1961) and *Carringer v. Rodgers,* 331 F.3d 844 (11th Cir.2003). This Court has reproduced the *Hecksel* Court's effective illustration of those cases here:

> In *Brazier,* the plaintiff alleged her husband was beaten to death by Georgia police offi-

cers, in violation of his "rights and privileges of being secure in his person, of due process and equal protection of the law." 293 F.2d at 402. The question the former Fifth Circuit needed to answer was "whether death resulting from violation of the Civil Rights Statutes give[s] rise to a federally enforceable claim for damages sustained by

In recognizing the distinction, the Eleventh Circuit Court of Appeals stated,

> Brazier and Carringer were both instances where state law was used to fill gaps in federal law through § 1988's borrowing provision. [Plaintiff] Robertson would have us also look to state law through § 1988's borrowing provision to decide her case. Her argument misses the dispositive difference between Brazier and Carringer and our case.
>
> In those cases, the plaintiffs were seeking vindication of the *decedent's* rights under § 1983. Here, Robertson alleges a violation of *her* rights. Regardless of whose rights are being asserted, before § 1983 and § 1988 can come into play, the plaintiff must still establish the existence of a federal right. Because Robertson has failed to establish a federal right, we never reach § 1983, let alone § 1988 and state law.

*Hecksel,* 420 F.3d at 1261 (emphasis in original) (parenthetical addition not in original). Courts in our Circuit have suggested the same distinction that was cleanly drawn in *Hecksel. See, e.g., Henning v. O'Leary,* 477 F.3d 492, 495 (7th Cir.2007) (calling it a "dubious proposition" that the daughter and parents of decedent could assert a constitutional claim for loss of companionship but stating that the decedent's survivors "might be able to step into his shoes and exercise his *remedies* ... [depending] on a state's survivorship statutes.") (emphasis in original); *Thomas v. Cook County Sheriff,* 401 F.Supp.2d 867, 872 (N.D.Ill.2005) (noting that *Russ* did not foreclose a parent's right to maintain a wrongful death claim under section 1983 for the benefit of the decedent's surviving spouse and next of kin); *Evain v. Conlisk,* 364 F.Supp. 1188, 1191 (N.D.Ill.1973) (noting that the incorporation of state wrongful death recovery provisions into section 1983 claims is somewhat of an exception to the general rule that one cannot sue over the deprivation of another's civil rights); *see also Commerce Bank N.A. v. Carmichael,* 2007 WL 496385, at *2 n. 2 (C.D.Ill. 2007) ("Plaintiff may ... be asserting that the companionship damages arise not from the violation of the children's constitutional interest, but flow instead from the violation of [the decedent's] constitutional interest, because such damages are allowed under Illinois law.").

■ This Court is of the opinion that it would not conflict with federal law to incorporate the damages and survivorship provisions of the Illinois Wrongful Death Act into the instant section 1983 claim and, thereby, potentially allow Brian Pitzer's estate to recover for the loss of consortium, society, and companionship experi-

the victim during his lifetime, by his survivors, or both." *Id.* The court spent the bulk of its opinion addressing the incorporation of Georgia's survival statute, which allowed the decedent's claims to survive his death, but it also incorporated Georgia's wrongful death statute, a "separate and distinct cause[ ] of action" allowing certain survivors to recover the full value of the life of the decedent, *id.* at 407 n. 15, because "regard has to be taken of both classes of victims." *Id.* at 409. The incorporation of Georgia's wrongful death statute was not done in response to a violation of the wife's rights: it was done to remedy the violation of the *decedent's* rights. *See id.* at 408–09.

In *Carringer,* the plaintiff's son was shot and killed by the son's wife, a police officer, with her service revolver. The decedent's mother brought "a § 1983 claim for the wrongful death of the decedent whose constitutional rights were violated." 331 F.3d at 848. There, we followed *Brazier* and incorporated Georgia's wrongful death statute into federal law, holding that "Carringer, as a parent, has standing to assert a § 1983 claim for the wrongful death of her son in violation of *his* constitutional rights." *Id.* at 850....

*Hecksel,* 420 F.3d at 1261 (emphasis in original) (footnote omitted).

enced by his wife and minor children as the result of his death.[8] These types of damages awards seem to be consistent with the policies of compensation and deterrence upon which section 1983 is based.[9] *See Robertson,* 436 U.S. at 590–91, 98 S.Ct. 1991 ("The policies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law."); *see also Spence,* 507 F.2d at 558 ("The Supreme Court has indicated that, in civil rights actions, 'both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes.'") (quoting *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 240, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969)). Of course, the Court makes no prediction as to whether Plaintiff will ultimately be able to establish Defendant LaCost's liability in this action.

■ As to Plaintiff's request for damages to compensate Brian Pitzer's parents for their loss of his companionship, Illinois law does not allow this type of recovery in wrongful death actions when the decedent leaves surviving children. *See Murphy v. Aton,* 276 Ill.App.3d 127, 212 Ill.Dec. 864, 657 N.E.2d 1209, 1211 (Ill.App.Ct.1995); *Rallo v. Crossroads Clinic, Inc.,* 206 Ill. App.3d 676, 151 Ill.Dec. 744, 565 N.E.2d 15, 17 (Ill.App.Ct.1990). Therefore, no such recovery will be allowed under the federal claim in our case. Defendants' Rule 12 motion is granted as to this narrow point. Accordingly, Plaintiff's specific request for damages to compensate Brian's parents is stricken from Paragraphs 24 and 25 of the Complaint.

■ The only remaining issue is whether, under the instant state law battery claim standing alone, Brian's estate could recover for the loss of consortium, society, and companionship of his wife, children, or parents. The answer is no. A battery claim is independent to the claimant. *See Mitchell v. White Motor Co.,* 58 Ill.2d 159, 317 N.E.2d 505, 507 (1974) ("[A]lthough actions for personal injuries and actions for loss of consortium may derive from the same operative facts, they are legally distinct."); *see also Monroe v. Trinity Hospital–Advocate,* 345 Ill.App.3d 896, 281 Ill.Dec. 381, 803 N.E.2d 1002, 1005 (Ill.App.Ct.2003). Therefore, Defendants' motion to dismiss is granted on this point as well, and, to the extent Plaintiff is requesting these types of derivative recoveries under the battery claim, the request is stricken from the Complaint.

As a recap, Defendants' Rule 12 motion is granted to the extent that Plaintiff seeks recovery, under section 1983, for Thomas and Neva Pitzer's loss of Brian Pitzer's society and companionship. The motion is also granted to the extent that Plaintiff seeks damages, under the state law battery claim standing alone, to compensate Brian Pitzer's wife, children, or parents for their loss of Brian's consortium, society, or companionship. Defendants' motion is otherwise denied.

8. Nor would it conflict with federal law to incorporate the provisions of the Illinois Survival Act into this section 1983 action so as to allow Brian Pitzer's estate to recover for the pain and suffering he experienced, and for the medical expenses he incurred, prior to his death.

9. It does not appear that *Russ* disturbed *Bell's* holding to the extent *Bell* found nothing implicit in section 1983 that prohibits a damages award for lost companionship and society. Our Court of Appeals, in *Bell,* drew an explicit line between its recognition of a section 1983 cause of action for parents of adult children (which was overturned in *Russ* ) and its consideration of a "common law limitation on the available remedy." *See Bell,* 746 F.2d at 1248–50.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss or Strike is GRANTED, in part, and DENIED, in part. The Clerk is directed to strike those portions of Paragraphs 24 and 25 of the Complaint that seek damages on behalf of Brian Pitzer's parents.