[No. C038388. Third Dist. May 1, 2002.]

VALRI ANN ZWICKER, Plaintiff and Appellant, v.
ALTAMONT EMERGENCY ROOM PHYSICIANS MEDICAL GROUP
et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Freeman & Freeman and Rebecca J. Freeman for Plaintiff and Appellant.

Fleer, Daugherty & Raub, John L. Fleer and Natasha M. Lucin for Defendants and Respondents Altamont Emergency Room Physicians Medical Group and Adin Levine.

Sheuerman, Martini & Tabari, Michael A. Garvin; Greines, Martin, Stein & Richland, Martin Stein, Feris M. Greenberger and Matthew C. Mickelson for Defendant and Respondent Sutter Tracy Community Hospital.

Cassel Malm Fagundes, Joseph H. Fagundes and Mikki M. Riella for Defendant and Respondent James Wu.

---

**OPINION**

**ROBIE, J.**—In March 1999, Gary Zwicker suffered an injury that resulted in the loss of his left testicle. In February 2000, after three tests showed he was infertile, Gary married plaintiff Valri Ann Zwicker. Two weeks later, Gary and Valri sued various defendants who they claimed had failed to diagnose Gary's condition in time to prevent the loss of his testicle and his infertility. The trial court granted summary judgment against Valri on her cause of action for loss of consortium on the ground she was not married to Gary at the time her claim arose.

On appeal, Valri claims her cause of action for loss of consortium did not accrue until she knew or should have known that Gary's infertility was permanent, which did not occur until after they were married. We conclude Valri's knowledge of Gary's infertility is irrelevant as to whether she has a valid cause of action for loss of consortium. Because she was not married to Gary at the time of the alleged misdiagnosis, Valri never had a valid cause of action for loss of consortium, and her alleged postmarital discovery of Gary's permanent infertility could not create a cause of action where one did not exist in the first place. Accordingly, we will affirm the judgment.

### FACTUAL AND PROCEDURAL HISTORY

For purposes of this appeal, the following facts are undisputed: On March 21, 1999, Gary Zwicker went to the emergency room at Sutter Tracy Community Hospital complaining of pain in his left scrotum. Emergency room physician Adin Levine, M.D., examined him and ordered an ultrasound, which was reviewed by radiologist James Wu, M.D. Dr. Wu determined there was no evidence of testicular torsion, and Gary was discharged with antibiotics and told to follow up with his own physician.

The next day, Gary felt increased pain in his scrotum and went to the emergency room at a hospital in Santa Rosa. A urologist there diagnosed "acute left scrotum with probable torsion of spermatic cord" and performed emergency surgery. The urologist found that the left spermatic cord was torsed and that Gary's left testicle was necrotic so he removed the testicle.

Over the next 11 months, Gary underwent three semen analyses, each of which indicated he was infertile. Shortly after the third semen analysis in February 2000, Gary and Valri were married. Two weeks later, Gary and Valri filed an action for damages against defendants Altamont Emergency Room Physicians Medical Group, Dr. Levine, Dr. Wu, and Sutter Tracy Community Hospital (collectively defendants).[1] The complaint alleged that defendants had negligently failed to diagnose and treat Gary's condition, resulting in sterility, among other things. The sole claim alleged by Valri was a claim for loss of consortium. Valri complained that as a result of defendants' negligence, Gary was incapable of impregnating her.

Defendants moved for summary judgment, arguing that Valri could not claim loss of consortium because she and Gary were not married when defendants allegedly failed to diagnose and treat Gary's condition properly. In opposition to the motions, Valri argued she had a valid claim for loss of consortium because Gary's "current infertility is an injury manifesting at the present time and during the time frame of a valid marriage between Gary and Valri Zwicker." The trial court granted the motions on the ground that Valri was not married to Gary "at the time her claim for loss of consortium arose." Valri appeals.[2]

---

[1] The complaint also named another physician as a defendant; however, that physician was dismissed from the action during the pendency of the appeal.

[2] On April 12, 2001, Valri filed her notice of appeal from the order granting summary judgment entered March 29, 2001. The judgment against Valri was not entered until April 18, 2001, with an amended judgment awarding costs of $100 entered on May 31, 2001. We will treat Valri's notice of appeal as referring to the appealable judgment, rather than the

## DISCUSSION

██ Relying on cases involving the statute of limitations on medical malpractice claims, Valri contends she has a valid cause of action for loss of consortium based on defendants' negligent failure to diagnose Gary's condition because her cause of action did not accrue until she knew or should have known that Gary's infertility was permanent, which did not occur until after they were married. Defendants, on the other hand, contend Valri has no valid loss of consortium claim because she knew about Gary's fertility problems before their marriage, even if she did not know those problems were permanent.

For the reasons that follow, we conclude the timing and extent of Valri's knowledge of Gary's infertility is irrelevant to the proper resolution of this case. ██ "[I]n California each spouse has a cause of action for loss of consortium . . . caused by a negligent or intentional injury to the other spouse by a third party." (*Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408 [115 Cal.Rptr. 765, 525 P.2d 669] (*Rodriguez*).) By definition, however, a loss of "consortium" is the loss of certain rights and privileges inhering in the marital relationship, including companionship, emotional support, love, and sexual relations. (See *id.* at p. 400.) In California, "the right to recover for loss of consortium is founded on the relationship of marriage, and absent such a relationship the right does not exist." (*Elden v. Sheldon* (1988) 46 Cal.3d 267, 278 [250 Cal.Rptr. 254, 758 P.2d 582] (*Elden*).)

██ Here, Valri and Gary were not married when defendants allegedly failed to diagnose Gary's testicular torsion, resulting in Gary's loss of fertility. Because Valri had no right to Gary's consortium at the time of the misdiagnosis, she suffered no actionable loss as a result of defendants' alleged negligence. That Valri may have discovered sometime after the marriage that Gary was permanently infertile makes no difference. A premarital injury does not give rise to a cause of action for loss of consortium at the time it occurs, and the postmarital discovery of the premarital injury cannot create a cause of action for loss of consortium where one did not exist in the first place. Accordingly, the trial court properly granted summary judgment in favor of defendants on Valri's claim.

---

nonappealable order granting summary judgment, and as having been filed immediately after the entry of judgment. (See Cal. Rules of Court, rule 2(d); *Minor v. Municipal Court* (1990) 219 Cal.App.3d 1541, 1546, fn. 2 [268 Cal.Rptr. 919].)

## I

### *Cause of Action for Loss of Consortium*

 The California Supreme Court has held that "[j]udicial recognition of a cause of action for loss of consortium . . . must be narrowly circumscribed." (*Borer v. American Airlines, Inc.* (1977) 19 Cal.3d 441, 444 [138 Cal.Rptr. 302, 563 P.2d 858].) Historically, the court did not recognize loss of consortium claims at all, concluding that "the Legislature is the proper body to decide whether recovery for loss of consortium should be permitted and, if so, under what terms and conditions." (*West v. City of San Diego* (1960) 54 Cal.2d 469, 477 [6 Cal.Rptr. 289, 353 P.2d 929].)

In 1974, however, the Supreme Court relented and held that "a married person whose spouse has been injured by the negligence of a third party" may recover "for loss of 'consortium,' i.e., for loss of conjugal fellowship and sexual relations." (*Rodriguez, supra,* 12 Cal.3d at p. 385.) Three years later, the court refused to extend its recognition of loss of consortium claims to the parent-child relationship. (*Borer v. American Airlines, Inc., supra,* 19 Cal.3d at p. 444; *Baxter v. Superior Court* (1977) 19 Cal.3d 461 [138 Cal.Rptr. 315, 563 P.2d 871].) The court explained that "significant differences [exist] between the marital relationship and the parent-child relationship that support the limitation of a cause of action for loss of consortium to the marital situation . . . ." (*Borer v. American Airlines, Inc., supra,* 19 Cal.3d at p. 444.)

 Eleven years later, in 1988, the Supreme Court once again refused to extend loss of consortium claims beyond the marital relationship, this time refusing to recognize loss of consortium claims by unmarried, cohabiting couples with stable and significant relationships parallel to a marital relationship. (*Elden, supra,* 46 Cal.3d at pp. 277-279.)

## II

### *Plaintiff Must Be Married at the Time of the Injury-producing Event*

Most courts in this country "have denied recovery for loss of consortium where the injury occurs before the marriage." (Annot., Recovery for Loss of Consortium for Injury Occurring Prior to Marriage (1981) 5 A.L.R.4th 300, 301; see also *Grant v. Avis Rent a Car System, Inc.* (1984) 158 Cal.App.3d 813, 816 [204 Cal.Rptr. 869].) For example, in *Lieding v. Commercial Diving Center* (1983) 143 Cal.App.3d 72 [191 Cal.Rptr. 559], a man was injured in a diving accident a month and a half before his wedding. Following the

wedding, he sued the diving companies, and his wife brought a claim for loss of consortium. Division One of the Second Appellate District concluded the trial court had properly granted summary judgment against the woman on her claim. Quoting with approval a decision of the Supreme Judicial Court of Maine, the court wrote: " 'The general rule is that no person has a right of action against a wrongdoer, unless that person is personally injured. The cause of action accrues, generally, when the tort is committed. [Citations.] When the alleged antenuptial tort was committed by the defendant against the woman plaintiff, the man plaintiff suffered no injury, because he possessed no marital right at that time, never having assumed any marital obligations.' " (*Id.* at p. 75, quoting *Sawyer v. Bailey* (Me. 1980) 413 A.2d 165, 167, 5 A.L.R.4th 292; see also *Sostock v. Reiss* (1980) 92 Ill.App.3d 200 [47 Ill.Dec. 781, 415 N.E.2d 1094, 1098-1099] ["Because plaintiff had no right to the consortium of Wendy on the day of her injury, defendants owe no duty to plaintiff to protect or refrain from interference with his nonexistent rights"].)

## III

### *Delayed Discovery of a Premarital Injury Does Not Create a Cause of Action for Loss of Consortium*

Although most courts in the United States have denied recovery for loss of consortium based on injuries that predated the marriage, some courts have recognized an exception to this bar when the injuries were unknown until after the marriage. The first case in this line of decisions appears to have been *Stager v. Schneider* (D.C.App. 1985) 494 A.2d 1307 (*Stager*). In *Stager*, the defendant physician failed to inform a woman, Dixie, of a spot or shadow he saw on her lung X-ray. (*Id.* at p. 1310.) Three months later, Dixie married Patrick Stager. (*Id.* at p. 1315.) Six months after the wedding, Dixie was diagnosed with lung cancer. (*Ibid.*) Patrick claimed he had a viable claim for loss of consortium because *Dixie's* cause of action did not accrue until the diagnosis of lung cancer, which occurred after they were married. (*Ibid.*) The court agreed, stating: "A spouse's claim for loss of consortium generally could not accrue until the other spouse's cause of action for negligence accrued. We see no reasons of sufficient merit which counsel against viewing the marital status at the time the cause of action accrues as being the relevant time. . . . [N]either the wrongful conduct nor the fact of injury was known prior to marriage. . . . We are of the view that the ratio decidendi of cases holding that where the tortious conduct and the fact of injury were known or knowable prior to the marriage, there is no claim for loss of consortium are not persuasive where, as here, the discovery rule

controls Mrs. Stager's cause of action for negligence." (*Id.* at p. 1316, fn. omitted.) At least three other courts have followed in the footsteps of the *Stager* court. (See *Furby v. Raymark Industries, Inc.* (1986) 154 Mich.App. 339 [397 N.W.2d 303, 305-307]; *Kociemba v. G.D. Searle & Co.* (D.Minn. 1988) 683 F.Supp. 1577, 1578; *Green v. A.P.C. (Am. Pharmaceutical Co.)* (1998) 136 Wash.2d 87 [960 P.2d 912, 918-919].)

At least two courts, however, have rejected the reasoning of the *Stager* line of cases. In *Anderson v. Eli Lilly & Co.* (1991) 79 N.Y.2d 797 [580 N.Y.S.2d 168, 588 N.E.2d 66], the New York Court of Appeals refused to allow a husband's cause of action for loss of consortium based on his wife's infertility, which was allegedly caused by injuries she had suffered to her reproductive system due to her *in utero* exposure to diethylstilbestrol. Explaining its conclusion, the court wrote: "It is by now well settled that a cause of action for loss of consortium does not lie if the alleged tortious conduct and resultant injuries occurred prior to the marriage [citations]. Contrary to plaintiff's contention, the rationale underlying this rule is not limited to situations where the injuries to the spouse in question are manifest at the time of the marriage. As the Appellate Division explained below: 'Consortium represents the marital partners' interest in the continuance of the marital relationship as it existed at its inception [citation], not upon some guarantee that the marital partners are free of any preexisting latent injuries' [citations]." (*Id.* at pp. 67-68, fns. omitted.)

The Iowa Supreme Court followed *Anderson* in *Doe v. Cherwitz* (Iowa 1994) 518 N.W.2d 362, refusing to allow a husband's loss of consortium claim based on injuries his wife sustained from a sexual assault by a physician during a pelvic examination before their marriage. Rejecting the argument that a cause of action for loss of consortium is valid as long as the underlying harm to the other spouse is not discovered until after the marriage, the court wrote: "The discovery rule has been adopted to ameliorate the harsh results of a statute of limitations when the injury was unknown and basically unknowable. [Citations.] [¶] The discovery rule anticipates that the claimant had a valid cause of action within the period of limitations, but for some reason, was unaware of it. Here, because there was no marital relation between Jane and John Doe, there was no cause of action within the period of limitations, and the discovery rule cannot create one when none had ever existed during the period of limitations." (*Id.* at p. 365.)

We are aware of no decision by a California court addressing whether a negligent or intentional act occurring before the marriage can give rise to a cause of action for loss of consortium when the injury resulting from the act is not discovered until after the marriage.

■ It is unquestionable that a valid marriage is the sine qua non of a cause of action for loss of consortium in California. As our Supreme Court explained in *Elden*, "the right to recover for loss of consortium is founded on the relationship of marriage, and absent such a relationship the right does not exist." (*Elden, supra*, 46 Cal.3d at p. 278.) "[T]he cause of action protects the parties' relational interest, and if the relationship did not exist at the time of the tort, a fortiori it could not be injured." (*Butcher v. Superior Court* (1983) 139 Cal.App.3d 58, 61 [188 Cal.Rptr. 503, 40 A.L.R.4th 539], disapproved on other grounds in *Elden, supra*, 46 Cal.3d at p. 279.)

*Stager* and its progeny have relied on the delayed discovery rule to justify allowing loss of consortium claims arising out of premarital injuries where the injuries were not known until after the marriage. (See *Stager, supra*, 494 A.2d at p. 1316; *Furby v. Raymark Industries, Inc., supra*, 397 N.W.2d at p. 347; *Kociemba v. G.D. Searle & Co., supra*, 683 F.Supp. at p. 1578; *Green v. A.P.C. (Am. Pharmaceutical Co.), supra*, 960 P.2d at p. 919.) "Under the common law 'delayed discovery' rule 'a cause of action does not accrue, nor the statute of limitations start to run, until plaintiff discovers or in the exercise of reasonable diligence should discover the negligent cause of his or her injury.' " (*Russell v. Stanford University Hospital* (1997) 15 Cal.4th 783, 786, fn. 1 [64 Cal.Rptr.2d 97, 937 P.2d 640], quoting *Young v. Haines* (1986) 41 Cal.3d 883, 890 [226 Cal.Rptr. 547, 718 P.2d 909].) There is authority to support the proposition that the delayed discovery rule applies to loss of consortium claims in California. (See *Uram v. Abex Corp.* (1990) 217 Cal.App.3d 1425, 1438 [266 Cal.Rptr. 695] [holding that the accrual of a wife's cause of action for loss of consortium "was delayed pursuant to the discovery rule until she was aware of her injury and its negligent cause"].)

This is of no help to plaintiff, however, since the purpose of the delayed discovery rule is "to prevent tort claims from expiring before they are discovered." (*Israelsky v. Title Ins. Co.* (1989) 212 Cal.App.3d 611, 622 [261 Cal.Rptr. 72].) The delayed discovery rule has no place in determining whether a tort claim *ever arose in the first place.*

An example should suffice to illustrate our point: Assume A is negligently injured before his marriage to B, and both A and B learn before the wedding that A is infertile because of the premarital injury. Now, assume the same set of facts with respect to C and D, except that neither C nor D finds out until *after* their wedding that C is infertile because of the premarital injury. In the first case, it is clear under the overwhelming weight of authority, both in this state and the rest of the country, that B would not have a cause of action for loss of consortium because no marital relationship existed at the time A was

injured. Why should the result be any different in the second case? In both cases, there is a negligent act that causes harm to a later marital relationship, yet under *Stager* and its progeny only D would have a cause of action for loss of consortium because D discovered the infertility of her husband after the wedding, not before like B.

We are unaware of any other area in tort law in which the existence of a cause of action depends on the date the injury is discovered. The delayed discovery rule "originated as a means of preserving negligence claims" from the strict application of the statute of limitations, which might otherwise be deemed to have run even before the plaintiff knew he or she had a claim. (*Israelsky v. Title Ins. Co., supra,* 212 Cal.App.3d at p. 622.) To our knowledge, the delayed discovery rule has never been invoked in California to justify the very existence of a cause of action. There is no basis for making an exception for loss of consortium.

## CONCLUSION

For the foregoing reasons and because our Supreme Court has held that "[j]udicial recognition of a cause of action for loss of consortium . . . must be narrowly circumscribed" (*Borer v. American Airlines, Inc., supra,* 19 Cal.3d at p. 444), we hold that a premarital injury cannot provide the basis for a loss of consortium claim in California, regardless of whether the plaintiff first learned of the injury before or after the marriage. If there is no marriage at the time of the negligent or intentional act causing the injury, then there is no cause of action for loss of consortium, and later discovery of the injury will not change that result. Because Valri's loss of consortium claim was based on alleged misdiagnosis and treatment of Gary occurring before their marriage, Valri never had a valid cause of action for loss of consortium, and the trial court properly granted summary judgment in favor of defendants on Valri's claim.

## DISPOSITION

The judgment is affirmed.

Scotland, P. J., and Davis, J., concurred.