[No. B226243. Second Dist., Div. Three. May 24, 2011.]

DONALD MEALY, Plaintiff and Appellant, v.
B-MOBILE, INC., et al., Defendants and Respondents.

## COUNSEL

Agnew Brusavich, Bruce M. Brusavich, Tobin D. Ellis; and Jean Ballantine for Plaintiff and Appellant.

Brown, Brown & Klass and Robert L. Kaufman for Defendants and Respondents.

## OPINION

**CROSKEY, Acting P. J.**—Donald Mealy appeals a defense judgment on his counts against B-Mobile, Inc., and Guldmann, Inc., for loss of consortium and negligent infliction of emotional distress after the granting of a motion for judgment (Code Civ. Proc., § 631.8) in a nonjury trial. He contends the trial court's findings that he suffered no cognizable damages on either count are based on legal error and are not supported by the evidence. We conclude that the evidence compels the conclusion that Donald Mealy suffered a compensable loss of consortium and that the trial court's finding to the contrary was error. We also conclude that Donald Mealy has shown no error in the denial of relief on his count for negligent infliction of emotional distress. We therefore will affirm the judgment in part and reverse it in part.

### FACTUAL AND PROCEDURAL BACKGROUND

#### 1. *Factual Background*

Donald Mealy, born in 1925, and Adelaide Mealy, born in 1927, married in 1951. Adelaide Mealy was stricken with polio in 1952 and suffered almost complete paralysis in both legs. She was confined to a wheelchair after that time, but was able to drive a car and work outside the home. She had five children and worked as a counselor for Catholic Social Services for 30 years, until she retired at the age of 63 in 1990. She began to lose strength in her arms at about that time, and mobility became more difficult.

Adelaide Mealy used a device known as a Hoyer lift to transfer her from the bed to a wheelchair beginning in approximately 2000. She would rest on

a sling that was suspended from an arm by two chains. She fell from the device in 2006, suffering a broken hip. She recuperated within one year.

The Mealys replaced the Hoyer lift with a Guldmann lift system. The new lift system included a sling with straps to support her, an electric motor to lift and lower her, and a track mounted overhead to transport her from the bedroom to the bathroom. Donald Mealy transferred his wife in and out of bed and from the bedroom to the bathroom using the lift system. After being transferred from the bed in the morning, she typically would sit in her wheelchair for three to five hours at a time, resting in bed for an hour at noon and again late in the afternoon. She was able to do household chores such as mop and sweep the floor, clean house, cook, and garden. She also participated in leisure activities away from home such as eating lunch with friends, visiting family out of town, and going to parks and art galleries. Apart from having to be transferred into and out of bed, she was very independent.

In August 2008, part of the sling gave way as Donald Mealy was preparing to lower his wife onto the commode, causing her to fall to the floor. She lay on the floor for approximately 10 to 12 minutes until the paramedics arrived. She spent three days in the hospital followed by three weeks at a rehabilitation center. She suffered a hip fracture in the fall. Her extended bed rest resulted in atrophy of her trunk muscles.

After the fall, Adelaide Mealy requires assistance in almost every aspect of her daily living. She is unable to groom herself as she was before the fall. She is able to sit in her wheelchair for only two hours at a time, after which she requires bed rest to relieve the pain. She is incontinent, which she was not before the fall. She is unable to do household chores or participate in leisure activities as before. Her husband has become her full-time caretaker.

## 2. *Trial Court Proceedings*

Plaintiffs filed a complaint against defendants in January 2009, alleging counts by Adelaide Mealy for negligence, products liability and breach of warranty, and counts by Donald Mealy for loss of consortium and negligent infliction of emotional distress. A nonjury trial commenced in March 2010.

Donald Mealy testified at trial on cross-examination:

Question: "You're with your wife more now, not less than before the accident?"

Answer: "That's right."

Question: "And you love her just as much?"

Answer: "More."

Question: "And she loves you just as much?"

Answer: "More."

Question: "So this hasn't hurt your relationship with each other, has it?"

Answer: "Not a bit."

Defendants moved for judgment after the plaintiffs' case-in-chief. The trial court granted the motion as to the counts by Donald Mealy and denied the motion as to the counts by his wife.

The trial court denied Donald Mealy's motions to reconsider the ruling and to set aside the judgment. After trial, the court filed a statement of decision. The judgment entered on June 17, 2010, awards $555,127.99 in damages to Adelaide Mealy against both defendants and awards no relief to Donald Mealy. Donald Mealy timely appealed the judgment.

## CONTENTIONS

Donald Mealy contends (1) the trial court erroneously concluded that his loss of consortium must be complete rather than partial in order to justify an award of damages and that his overall satisfaction with his marital relationship negated any loss of consortium; (2) the court erroneously concluded that he must suffer a certain degree of emotional distress in order to justify an award of damages for negligent infliction of emotional distress; and (3) the evidence does not support the findings that he suffered no damages.

## DISCUSSION

### 1. Standard of Review

A trial court ruling on a motion for judgment under Code of Civil Procedure section 631.8 weighs the evidence as the trier of facts and, if the motion is granted, adjudicates the merits of the dispute. (*Id.*, subds. (a), (c).) The standard of review of a judgment entered after the granting of a motion for judgment is the same as that of a judgment entered after a completed trial. We review the court's factual findings under the substantial evidence standard and independently review questions of law. (*Allegretti & Co. v. County of Imperial* (2006) 138 Cal.App.4th 1261, 1269 [42 Cal.Rptr.3d 122].)

Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible, and of solid value. Under the substantial evidence standard of review, we view the evidence in the light most favorable to the judgment and accept as true all evidence tending to support the judgment, including all facts that reasonably can be deduced from the evidence, and must affirm the judgment if an examination of the entire record viewed in this light discloses substantial evidence to support the judgment. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183]; *Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633 [29 Cal.Rptr.2d 191].)

### 2. *Donald Mealy Suffered a Compensable Loss of Consortium*

■ "Consortium" refers to " 'the noneconomic aspects of the marriage relation, including conjugal society, comfort, affection, and companionship.' [Citation.]" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 793, fn. 1 [108 Cal.Rptr.3d 806, 230 P.3d 342] (*Boeken*).) Consortium also encompasses sexual relations, moral support, and household services. (*Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 405, 409, fn. 31 [115 Cal.Rptr. 765, 525 P.2d 669] (*Rodriguez*).) A person who suffers a loss of consortium as the result of a negligent or intentional injury to his or her spouse is entitled to recover damages from the tortfeasor. (*Id.* at p. 408.)

The California Supreme Court in *Rodriguez, supra,* 12 Cal.3d at pages 405–406, discussed the nature of such a loss: "Nor is the wife's personal loss limited to her sexual rights. As we recognized in *Deshotel* [*v. Atchison, T. & S. F. Ry. Co.* (1958) 50 Cal.2d 664, 665 [328 P.2d 449]], consortium includes 'conjugal society, comfort, affection, and companionship.' An important aspect of consortium is thus the *moral* support each spouse gives the other through the triumph and despair of life. A severely disabled husband may well need all the emotional strength he has just to survive the shock of his injury, make the agonizing adjustment to his new and drastically restricted world, and preserve his mental health through the long years of frustration ahead. He will often turn inwards, demanding more solace for himself than he can give to others. Accordingly, the spouse of such a man cannot expect him to share the same concern for *her* problems that she experienced before his accident. As several of the cases have put it, she is transformed from a happy wife into a lonely nurse. Yet she is entitled to enjoy the companionship and moral support that marriage provides no less than its sexual side, and in both cases no less than her husband. If she is deprived of either by reason of a negligent injury to her husband, the loss is hers alone."

The trial court in its statement of decision quoted from the following language in *Park v. Standard Chem. Way Co.* (1976) 60 Cal.App.3d 47, 50–51

[131 Cal.Rptr. 338] (*Park*): "Although *Rodriguez*[, *supra*, 12 Cal.3d 382,] discussed *Dillon* v. *Legg* [(1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912]], *Rodriguez* does not stand for the principle that the injury to and the pain and suffering of a negligently injured spouse creates a cause of action for loss of consortium in the other spouse. An allegation of 'partial loss of consortium' is not equivalent to the bromide 'a little bit pregnant.' The latter connotes complete pregnancy, the former is vague and indefinite. We think that loss of consortium as defined above means a complete loss of consortium for a definite period of time or a nondeterminable length of time and is not to be confused with the inevitable physical, mental, and emotional damage normally or usually suffered by one spouse when the other has been wrongfully injured."

█ The trial court credited to some extent the statement in *Park, supra*, 60 Cal.App.3d at page 51, that a loss of consortium must be "complete" rather than "partial." The proposition that a loss of consortium must be complete, rather than partial, is erroneous. (*Carlson v. Wald* (1984) 151 Cal.App.3d 598, 602 [199 Cal.Rptr. 10].) The statement in *Park* to that effect either was dictum, as stated in *Carlson, supra*, at page 602, or was an unfortunate choice of words apparently intended to distinguish loss of consortium from more general or less serious emotional distress resulting from a spouse's injury (see *Boeken, supra*, 48 Cal.4th at p. 810). The California Supreme Court in *Rodriguez, supra*, 12 Cal.3d at page 409, expressly recognized the right to recover damages for the "loss or impairment" of the plaintiff's rights of consortium, and we see no basis to conclude that a loss of consortium must be so extensive as to be considered complete in order to be compensable. Instead, a partial loss, or diminution, of consortium is compensable. (*Carlson, supra*, 151 Cal.App.3d at p. 602.)

Attempting to reconcile the apparent conflict between the statement in *Park, supra*, 60 Cal.App.3d at page 51, that a "partial" loss of consortium is not compensable and the statement in *Rodriguez, supra*, 12 Cal.3d at page 409, allowing recovery for the "impairment" of consortium rights, the trial court stated that a loss of consortium is compensable only if "the overall relationship is harmed" and that the relationship need not be "completely destroyed." Quoting Donald Mealy's testimony set forth above, the court concluded that he was claiming no loss to any of the elements of consortium. The court also found that the evidence "failed to show any detrimental effect on the overall spousal relationship . . . ."

█ We conclude that the trial court's narrow focus on particular testimony by Donald Mealy improperly disregarded other evidence and obscured what is readily apparent from this record. Adelaide Mealy suffered a debilitating injury that impaired her mobility and limited her independence. Although

her mobility and independence were limited before the incident, her condition deteriorated considerably as a result of the incident to the extent that, at the time of trial, she required 24-hour care, most of which is provided by her husband. A woman in her condition necessarily cannot provide the same conjugal society, comfort and moral support that she once could.

Donald Mealy's testimony that he and his wife love each other as much as before and that the changes in their lives as a result of this unfortunate event have not harmed their relationship is typical of a loving and faithful husband. Those supportive comments do not negate the tangible impact of his wife's injury on Donald Mealy and the inevitable loss of conjugal society, comfort, affection, moral support and other noneconomic elements of the marital relationship resulting from his becoming virtually a full-time caregiver for his wife. We conclude that the evidence compels the conclusion that Donald Mealy suffered a compensable loss of consortium and that the trial court's finding to the contrary is not supported by substantial evidence.

Accordingly, Donald Mealy is entitled to a new trial limited to determining the amount of damages for loss of consortium.[1]

### 3. *The Defense Judgment on the Count for Negligent Infliction of Emotional Distress Was Proper*

Donald Mealy contends the trial court "misapplied the law to the undisputed evidence that [he] suffered shock, anxiety, and fear, contemporaneous with and as a direct result of personally observing the product failure and Adelaide's resulting injuries." He discusses the law governing damages for emotional distress, but does not explain in what manner the trial court misconstrued the law or applied improper legal criteria.

A defendant has a duty to avoid causing emotional distress to a limited class of persons who observe conduct that causes harm to others. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1071 [9 Cal.Rptr.2d 615, 831 P.2d 1197].) This is known as the "bystander" theory of recovery. (*Ibid.*) Because the class of potential plaintiffs in such cases could be limitless, resulting in liability out of proportion to the defendant's culpability, the class of plaintiffs to whom a defendant owes a duty is limited. (*Id.* at p. 1073.) A plaintiff may recover damages for emotional distress caused by observing an injury negligently inflicted on another person "only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the

---

[1] An appellate court may order a limited new trial if a new trial on limited issues would not cause such uncertainty or confusion as to deny a fair trial, as here. (*Brewer v. Second Baptist Church* (1948) 32 Cal.2d 791, 801 [197 P.2d 713]; see *Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 776 [63 Cal.Rptr.2d 859, 937 P.2d 290].)

injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 647 [257 Cal.Rptr. 865, 771 P.2d 814]; accord, *Burgess, supra*, 2 Cal.4th at p. 1073.) The third element requires "serious emotional distress—a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." (*Thing, supra*, 48 Cal.3d at p. 668, fn. omitted.)

The trial court discussed the applicable law and concluded that there was no evidence that Donald Mealy had suffered any emotional distress as a result of witnessing the incident, as distinguished from emotional distress resulting from the aftereffects of the injury and his wife's recovery. The court stated in its statement of opinion: "All the evidence cited by plaintiff relates to the emotional distress stemming from the after-effects of the injury. Not one word was placed in evidence as to the existence of any damage from witnessing the event. All Mr. Mealy testified to was that he saw the fall, that he was concerned that his wife would suffocate in the wastebasket, that he turned her head to avoid that possibility, that he helped reposition her, and that he called 911. That is not, as the law requires before he may collect any damages at all, 'a reaction beyond that which would be anticipated in a disinterested witness.' *Thing v. La Chusa, supra*[, 48 Cal.3d] at 668. Not one iota of evidence was offered as to an emotional response to witnessing the event; e.g., any nightmares or 'visions' of the event, any health care of any kind or character being required as a result of witnessing the event, etc."

We see no indication that the trial court misconstrued the law in this regard or committed any legal error. We therefore must affirm the judgment on this count if substantial evidence supports the finding that Donald Mealy suffered no compensable emotional distress. The fact that emotional distress could result from observing a spouse's injury in these circumstances does not necessarily mean that emotional distress was proved in this case. In his testimony at trial, Donald Mealy did not describe any severe emotional reaction to witnessing his wife's fall. We conclude that the evidence supports the court's finding that he suffered no compensable emotional distress.

Donald Mealy also argues for the first time on appeal that he is entitled to damages for emotional distress suffered as a result of witnessing his wife's injury as a "direct victim" of defendants' negligence. Because substantial evidence supports the trial court's finding that he suffered no compensable emotional distress as a result of witnessing his wife injuries, this argument necessarily fails, so we need not consider it further.

## *DISPOSITION*

The judgment is affirmed as to the denial of relief on the count for negligent infliction of emotional distress and reversed as to the denial of relief on the count for loss of consortium, with directions to conduct a new trial limited to determining the amount of damages for loss of consortium, liability having been established. Each party must bear its own costs on appeal.

Kitching, J., and Aldrich, J., concurred.