[No. B239677. Second Dist., Div. Three. June 1, 2012.]

SHERRELL VANHOOSER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HENNESSY INDUSTRIES, INC., et al., Real Parties in Interest.

COUNSEL

The Lanier Law Firm, H.W. Trey Jones and Lynne Rasmussen for Petitioner.

Farrise Firm, Simona A. Farrise, Carla V. Minnard; The Arkin Law Firm and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Gordon & Rees, Roger M. Mansukhani, Steven A. Sobel and Mitchell B. Malachowski for Real Party in Interest Hennessy Industries, Inc.

Hawkins Parnell Thackston & Young, Robert E. Thackston, Julia A. Gowin, Stephanie L. Bowlby and Lauren E. Wood for Real Party in Interest John Crane Inc.

Crowell & Moring and Steven P. Rice for Coalition for Litigation Justice, Inc., as Amicus Curiae on behalf of Real Parties in Interest.

Fred J. Hiestand for the Civil Justice Association of California as Amicus Curiae on behalf of Real Parties in Interest.

Brydon Hugo & Parker, Edward R. Hugo, Shaghig D. Agopian and Thomas J. Moses for Toyota Motor Sales, U.S.A., Inc., as Amicus Curiae on behalf of Real Parties in Interest.

---

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

The first element of a loss of consortium cause of action is the existence of a marriage at the time of injury to the plaintiff's spouse. With asbestos-related illnesses, as with other latent diseases, appreciable injury does not occur at the time of exposure to the toxic substance, but often decades later when disease is diagnosed or symptoms are discovered. In this opinion, we hold that the first element of a loss of consortium cause of action is satisfied if the plaintiff's marriage to the injured spouse predates discovery of symptoms, or diagnosis, of an asbestos-related disease. This is so even if the marriage postdates the spouse's exposure to the asbestos that ultimately results in the injury.

Petitioner Sherrell Vanhooser seeks a writ of mandate directing the trial court to vacate its order granting the motion of defendant Hennessy Industries, Inc. (Hennessy), for summary judgment of her loss of consortium cause of action. Hennessy premised its motion on *Zwicker v. Altamont Emergency Room Physicians Medical Group* (2002) 98 Cal.App.4th 26 [118 Cal.Rptr.2d 912] (*Zwicker*) to argue that petitioner has no claim for loss of consortium because she was not married to her husband when he was exposed to the asbestos that

caused his mesothelioma. Petitioner contends the ruling was incorrect because, pursuant to California Supreme Court authority, her cause of action for loss of consortium damages could only arise once her husband was diagnosed with mesothelioma, not when he was exposed to the asbestos that later resulted in the disease.[1] The trial court certified its ruling granting summary judgment to this court (Code Civ. Proc., § 166.1). We conclude that *Zwicker* is entirely distinguished, and we grant the petition and the writ.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner's husband, Frederick Kenney, was exposed to asbestos in the 1960's and 1970's during his service in the United States Navy, and until 1990 as an automobile mechanic working with asbestos-containing automobile parts. It is undisputed that his last encounter with Hennessy's products was sometime between 1988 and August 1990. The couple married on December 31, 1991 or 1992. Petitioner's husband first exhibited symptoms of mesothelioma in late 2010, almost 20 years later, and he was diagnosed with the disease in June 2011.

Frederick[2] sued numerous companies, including Hennessy, seeking damages for negligence and strict products liability. Petitioner included a cause of action for loss of consortium. Hennessy's ground for summary judgment of petitioner's cause of action was that petitioner did not marry Frederick until after "the claimed injury-causing event in this case," namely his exposure to asbestos, with the result that, as a matter of law, petitioner has no cause of action for loss of consortium. Hennessy argued the dates of both diagnosis and discovery of the illness are irrelevant under *Zwicker*.

The trial court granted Hennessy's summary judgment motion, ruling pursuant to *Zwicker* that the date of the wrongful act, namely *exposure* to asbestos, was the relevant date for ascertaining existence of a loss of consortium cause of action. As Frederick married petitioner after he was exposed to asbestos, the court ruled, petitioner had no claim for loss of consortium damages as a matter of law. Petitioner effectively married her cause of action. The court expressed its dislike for the result *Zwicker* engendered and certified its ruling to this court. The trial court stated: "The loss of consortium issue addressed in this order is a recurring issue in the [*Los Angeles, Orange, and San Diego County*] *Asbestos Cases* pending

---

[1] "Mesothelioma is a form of cancer that starts to grow in [the mesothelium] lining: the most common form starts in the lining of the chest cavity and is therefore called *pleural mesothelioma*; less common is the form that starts in the lining of the abdomen, called *peritoneal mesothelioma*." (*Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127, 1135 [95 Cal.Rptr.2d 701, 998 P.2d 403] (*Hamilton*).)

[2] We refer to Frederick by his first name and mean no disrespect thereby.

before this Court. The Court believes that it is 'a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation.' " This petition for writ of mandate ensued because Frederick is gravely ill and the question presented by this petition is one of statewide concern. We issued a stay of the trial court proceedings and an order to show cause.

## DISCUSSION

a. *For purposes of creation of a loss of consortium cause of action, injury to the spouse in the latent disease context occurs when the illness or its symptoms are discovered or diagnosed, not at the time of the tortious act causing the harm.*

"[T]he right to recover for loss of consortium is founded on the relationship of marriage, and absent such a relationship the right does not exist." (*Elden v. Sheldon* (1988) 46 Cal.3d 267, 278 [250 Cal.Rptr. 254, 758 P.2d 582].) "A person who suffers a loss of consortium as the result of a negligent or intentional injury to his or her spouse is entitled to recover damages from the tortfeasor." (*Mealy v. B-Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1223 [124 Cal.Rptr.3d 804], citing *Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 408 [115 Cal.Rptr. 765, 525 P.2d 669].)

There are four elements to a cause of action for loss of consortium: "(1) a valid and lawful marriage between the plaintiff and the person injured *at the time of the injury*; [¶] (2) a tortious injury to the plaintiff's spouse; [¶] (3) loss of consortium suffered by the plaintiff; and [¶] (4) the loss was proximately caused by the defendant's act." (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 746, fn. 2 [54 Cal.Rptr.3d 527], italics added, citing 4 Levy et al., Cal. Torts (2006) Loss of Consortium, § 56.02[2], p. 56-4.) A loss of consortium cause of action is triggered by the spouse's injury. (*Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1089 [122 Cal.Rptr.3d 22]; cf. *Bartalo v. Superior Court* (1975) 51 Cal.App.3d 526, 533 [124 Cal.Rptr. 370] [husband's loss of consortium cause of action "does not arise unless his wife has sustained a personal injury"].) "A cause of action for loss of consortium is, by its nature, dependent on the existence of a cause of action for tortious injury to a spouse." (*Hahn v. Mirda, supra,* at p. 746.) And there is no right of action for loss of consortium if the spouse's " '*injury* occurs before the marriage.' " (*Zwicker, supra,* 98 Cal.App.4th at p. 31, italics added.) Therefore, it is the couple's marital status at the time the spouse is tortiously injured that determines whether the plaintiff can meet the first element of a loss of consortium right of action.

Injury is an essential element of any cause of action. (1A Cal.Jur.3d (2006) Actions, § 86, pp. 132–133; Civ. Code, §§ 3281 ["[e]very person who

suffers detriment from thé unlawful act or omission of another, may recover . . . damages"], 3282 ["[d]etriment is a loss or harm suffered in person or property"]; *Rodriguez v. Bethlehem Steel Corp., supra,* 12 Cal.3d at pp. 408–409 ["each spouse has a cause of action for loss of consortium . . . caused by a negligent or intentional *injury* to the other spouse by a third party" (italics added)].) Without injury to the spouse, the plaintiff has no loss of consortium claim. Thus, a cause of action is not complete in the sense it is not actionable, without spousal injury. (*Hahn v. Mirda, supra,* 147 Cal.App.4th at p. 746, fn. 2.)

Although injury often occurs at the same time as the wrongful act is committed (see, e.g., *Zwicker, supra,* 98 Cal.App.4th at p. 28), that is not always the case. With latent diseases, it is difficult to determine when the injury occurs and " '[*n*]*o temporally discrete event exists that encompasses the defendant's breach and the plaintiff's injury.*' " (*Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 529 [66 Cal.Rptr.2d 438, 941 P.2d 71], italics added (*Buttram*).)

■ "Mesothelioma is a latent, progressively developing disease," our Supreme Court explained. "[D]ecades can often pass between the time a person is first exposed to asbestos and the time he first develops a cancerous mesothelioma tumor. Moreover, although early formation of undetected cellular changes ultimately leads to contraction of the disease, it may be [30 to 40] years[3] before the cancerous cells will result in a tumor large enough to be detected, be medically diagnosed, or cause symptomatology of the disease." (*Buttram, supra,* 16 Cal.4th at p. 529.) " 'The combination of lengthy latency periods and diagnostic difficulties is a unique feature of toxic substances cases for purposes of statutes of limitations analysis . . . *or related legal issues* . . . . Instead, insidious disease litigation involves an extended chronology of causation unlike traditional snapshot torts.' [Citation.]" (*Ibid.,* italics added.)

■ With particular reference to latent injuries, our Supreme Court has established that "a cause of action for a latent injury or disease generally accrues, *in the sense that it is ripe for suit,* when the [spouse] discovers or should reasonably have discovered he has suffered a compensable injury." (*Hamilton, supra,* 22 Cal.4th at p. 1144, italics added.) Accordingly, "in the latent disease context, until the [spouse] is diagnosed with or otherwise learns

---

[3] "Mesothelioma is often difficult to diagnose: in . . . peritoneal mesothelioma . . . the tumor first grows as a spreading mass in the abdominal cavity of the victim, and its early signs are such nonspecific symptoms as stomach pain, nausea, vomiting, and weight loss. Mesothelial tumors initially grow very slowly; the disease has an average latency period *of 30 to 40 years.* But by the time the cancer is diagnosed, it is often in an advanced stage and is rapidly metastasizing. It is also inevitably fatal: there is no known cure for any form of malignant mesothelioma." (*Hamilton, supra,* 22 Cal.4th at p. 1136, italics added.)

he has the disease, he has not placed *any* reliance on rules of law governing potential tort causes of action of which he is as yet unaware. *It would make little sense to look to the occurrence of the 'wrongful act' (in essence, [the spouse's] exposure to defendants' asbestos products) as the sole event establishing accrual of a cause of action . . . .* [Thus, d]*iagnosis or discovery* of actual injury or symptoms *is the earliest point* at which it might reasonably be said, in the latent disease context, that the [spouse] has been placed on *actual notice of his injuries* such that he might contemplate suit and place reasonable reliance on the rules and laws governing recovery of damages for his compensable injuries." (*Buttram, supra*, 16 Cal.4th at p. 537, first italics in original.)

■ Hennessy argues that *Buttram* is distinguished because it addresses when a cause of action "accrues" for purposes of Proposition 51 (Civ. Code, § 1431.2 [liability for noneconomic damages is several only, not joint]), and did not consider the question of when a plaintiff may bring a loss of consortium cause of action. Hennessy correctly observes that accrual of a cause of action in the sense of creation of an actionable claim is not the same as accrual for purposes of the statute of limitations. "[A] cause of action may be viewed in the eyes of the law as 'accruing' for different purposes on different dates, depending on the purpose for which the accrual determination is being sought." (*Buttram, supra*, 16 Cal.4th at p. 530.) In this case, we are not concerned with "accrual" for purposes of Proposition 51 or the statute of limitations; we are only concerned with when asbestos-related injury occurs to a spouse to satisfy the first element of a loss of consortium cause of action, namely a valid and lawful marriage at the time of the spouse's injury. *Buttram* establishes the particular nature of insidious diseases and addresses at length the issue of when latent disease injury occurs for purposes of both "statutes of limitations analysis [and] . . . related legal issues." (*Buttram, supra*, at p. 529.) One such related legal issue is when actual injury occurs so as to create a right of action.[4]

■ Similar to insidious disease torts, legal malpractice cases can lack a temporally discrete event encompassing both the wrongful action and the injury, with the result such cases are instructive. " 'If the allegedly negligent

---

[4] Defendant John Crane, Inc., argues that the Supreme Court in *McCann v. Foster Wheeler LLC* (2010) 48 Cal.4th 68 [105 Cal.Rptr.3d 378, 225 P.3d 516] discussed when and where an asbestos-related injury is deemed to have legally developed and held it was at exposure, not manifestation of the disease. (*Id.* at p. 102.) But *McCann* involved a choice of law question and applied Oklahoma law. (*Id.* at pp. 89–102.) Oklahoma law in this context does not govern or influence our conclusion here. Furthermore, the court in *McCann* stated, "By contrast, plaintiff's action against Foster Wheeler clearly would be timely if California law were applied." (*Id.* at p. 89.)

By the same token, the out-of-state authorities cited by Hennessy and John Crane, Inc., are not persuasive.

conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized— does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of [the] attorney's negligence, the client cannot establish a cause of action for malpractice.' [Citation.] '. . . *Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue.*' [Citation.]" (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 749–750 [76 Cal.Rptr.2d 749, 958 P.2d 1062].) With both latent diseases and legal malpractice, there must be appreciable or actual injury before a right of action can arise. That injury does not necessarily occur simultaneously with the wrongful act and indeed may not appear for decades until the plaintiff suffers appreciable harm.

■ Applying the rules concerning latent-illness injury, a spouse has not suffered a compensable harm or injury from asbestos exposure until he or she is diagnosed with or discovers actual injury from or symptoms of the asbestos-related illness. (*Buttram, supra,* 16 Cal.4th at p. 537.) Necessarily, until the spouse suffers that injury, the plaintiff does not have a loss of consortium cause of action. (*Hahn v. Mirda, supra,* 147 Cal.App.4th at p. 746, fn. 2.) It is illogical to conclude, as Hennessy and John Crane, Inc., would have it, that a plaintiff's loss of consortium cause of action arises at exposure to asbestos where that exposure occurred decades before the spouse suffers any injury and becomes aware of his or her own right of action. Therefore, consistent with California law, in asbestos-related cases, we consider the couple's marital status at the time of diagnosis or discovery of actual injury or symptoms of the asbestos-caused illness, not at the time of exposure, to determine whether the first element of a loss of consortium right of action is satisfied.[5]

---

[5] Petitioner cites *Uram v. Abex Corp.* (1990) 217 Cal.App.3d 1425 [266 Cal.Rptr. 695] (*Uram*) to argue that the injury caused by asbestos occurs when the spouse is impaired, not when the spouse is exposed to asbestos. The issue in *Uram* was application of the statute of limitations once a plaintiff has suffered injury caused by her spouse's asbestos-related illness. *Uram* explained that the husband's "disability retirement in 1959 commenced the loss of services which constituted the injury to his wife . . . . When her consortium was to some extent reduced, a cause of action arose. [Citation.]" (*Id.* at p. 1438.) There are two separate injuries in a loss of consortium cause of action, the injury to the spouse during the marriage, and the plaintiff's loss of services damages as the proximate result of the spouse's injury. (*Hahn v. Mirda, supra,* 147 Cal.App.4th at p. 746.) We are only concerned here with the first injury, namely when asbestos-caused illness occurs to the spouse for purposes of satisfying the first element of the plaintiff's loss of consortium cause of action. *Uram* is relevant only insofar as it acknowledges that harm from asbestos does not occur at the time of exposure.

b.   Zwicker *is distinguished and does not govern.*

In *Zwicker*, as the result of a misdiagnosis, the plaintiff lost a testicle and was sterile. The couple married shortly *after* a third test showing infertility and brought their lawsuit two weeks after the wedding. (*Zwicker, supra*, 98 Cal.App.4th at p. 29.) Zwicker's wife sued for loss of consortium damages. The *Zwicker* court "h[e]ld that a premarital *injury* cannot provide the basis for a loss of consortium claim in California, regardless of whether the plaintiff first learned of the injury before or after the marriage." (*Id.* at p. 35, italics added.)

*Zwicker* is inapposite because it did not involve a latent disease such as mesothelioma; it concerned a so-called snapshot tort. (*Buttram, supra*, 16 Cal.4th at p. 529.) In *Zwicker*, the tortious act and the injury occurred almost simultaneously, i.e., the injury was fully appreciable at the time of the wrongful conduct. By contrast, with mesothelioma, as with other latent diseases, the tortious act—the exposure—can take place decades before any appreciable injury develops and becomes manifest. Incubating, undetectable damage resulting from exposure to asbestos is not equivalent to a sudden injury-causing event. *Zwicker* is also distinguished because there the couple married shortly after knowledge of the injury and two weeks before filing suit, with the result Mrs. Zwicker married her cause of action. Here, by contrast, Frederick did not suffer appreciable harm until he *discovered symptoms of or was diagnosed with* mesothelioma. By that time, petitioner and Frederick had been married for 19 or 20 years, and so petitioner did not marry her loss of consortium right of action.

Zwicker's wife argued that she was married before she discovered that her husband's injury was permanent. (*Zwicker, supra*, 98 Cal.App.4th at p. 28.) *Zwicker* stated, "We are aware of no decision by a California court addressing whether a negligent or intentional act occurring before the marriage can give rise to a cause of action for loss of consortium when the injury resulting from the act is not discovered until after the marriage" (*id.* at p. 33) and concluded, "[t]he delayed discovery rule has no place in determining whether a tort claim *ever arose in the first place*." (*Id.* at p. 34.) However, there can be separate and distinct periods marking the creation of a cause of action on the one hand and the beginning of the statute of limitations period on the other hand. (*Hamilton, supra*, 22 Cal.4th at pp. 1144–1145.) As explained, we are not concerned with a statute of limitations analysis. In *Zwicker*, the injury happened before the marriage and the only fact the wife did not know was the *extent* of her husband's damage. Here, by contrast, the issue is *not* discovery of harm that has already manifested. Rather, as Frederick suffers from a latent, slowly developing illness, he had no injury until long after the tortious act. Frederick was not actually injured until after

the couple had been married when a cancerous mesothelioma tumor developed. Discovery in the context of this case, therefore, fixes the date on which injury actually occurred to satisfy the first element of the loss of consortium cause of action.

Hennessy argues that *Zwicker* conveniently provides a readily applicable, bright-line rule that a plaintiff must be married to the injured party at the time of the *wrongful act* causing the injury. John Crane, Inc., observes *Zwicker* stated five times that the date of the negligent act controls, and the negligent act in this case is exposure to asbestos fibers. Admittedly, *Zwicker* appears to cite the *tortious conduct* as the event pegging creation of the cause of action. But it also cited *injury* as the triggering event. *Zwicker* stated, "we hold that a premarital *injury* cannot provide the basis for a loss of consortium claim in California . . . ." (*Zwicker, supra,* 98 Cal.App.4th at p. 35, italics added.) *Zwicker* also stated, "If there is no marriage at the time of the negligent or intentional *act causing the injury,* then there is no cause of action for loss of consortium . . . ." (*Ibid.,* italics added.) *Zwicker* understandably relied on both wrongful conduct and injury as creating a right of action because that case involved a snapshot tort and so a distinction between the tortious act and the harm had no legal relevance.

Hennessy argues we must follow *Zwicker* or risk expanding the loss of consortium cause of action in contravention of the Supreme Court's declaration that judicial recognition of this right of action should be narrowly circumscribed. (*Borer v. American Airlines, Inc.* (1977) 19 Cal.3d 441, 444 [138 Cal.Rptr. 302, 563 P.2d 858].) Our holding here is not expansive. As always, a valid marriage must exist before spousal injury for a loss of consortium right of action to lie. (*Hahn v. Mirda, supra,* 147 Cal.App.4th at p. 746, fn. 2; *Zwicker, supra,* 98 Cal.App.4th at p. 34 [Loss of consortium " 'protects the parties' relational interest, and if the relationship did not exist at the time of the tort, a fortiori it could not be injured.' "].) We are simply applying Supreme Court authority establishing when injury occurs to a spouse suffering asbestos-related disease for the purpose of establishing whether a plaintiff has met the first element of a loss of consortium cause of action.

██ Accordingly, to defeat petitioner's loss of consortium cause of action based on Frederick's mesothelioma, Hennessy had to demonstrate that Frederick suffered *injury,* i.e., that he was diagnosed with, or he discovered actual symptoms of, mesothelioma before his marriage to petitioner. Hennessy's motion did not make that showing. Rather, the sole issue Hennessy's summary judgment motion raised in addressing petitioner's cause of action for loss of consortium was whether, under California law, summary judgment should be granted because *"asbestos exposure* attributed to

Hennessy, the claimed *injury-causing event* in this case, ended well before Plaintiffs' marriage began." (Italics added.) Therefore, summary judgment was improperly granted.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order granting summary judgment of the loss of consortium cause of action and enter a new order denying the motion. This opinion shall become final upon filing of the opinion in this court. The stay of proceedings in the superior court will terminate upon finality of this opinion in this court. Petitioner shall recover costs in this original proceeding.

Klein, P. J., and Croskey, J., concurred.