Filed 3/24/15  In re Madrid CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MARIO RICHARD MADRID on Habeas Corpus. | D064845<br><br>(Super. Ct. No. SCD241723) |

Original proceeding on a petition for a writ of habeas corpus.  Relief granted.

Charles R. Khoury for Petitioner.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

Mario Richard Madrid filed a supplemental petition for a writ of habeas corpus, arguing he could not be guilty of the crimes to which he pled guilty.  He contends that he was not privy to an investigator's report indicating Madrid did not vandalize a certain jail cell as alleged by the prosecution.  Madrid argues that either his counsel was prejudicially

ineffective in allowing him to plead guilty or the prosecution committed *Brady*[1] error in failing to timely produce the report.

We determined that Madrid's entitlement to relief hinged on the resolution of certain factual disputes and ordered the presiding judge of the superior court to appoint a special master to hold an evidentiary hearing and make findings of fact in response to 13 enumerated questions. The special master produced a very thorough report, explaining that the prosecution did not commit *Brady* error, and Madrid's counsel was unprepared, but she was not prejudicially ineffective.

We conclude that the special master's factual findings are supported by substantial evidence. Nevertheless, we independently determine that Madrid was prejudiced by his counsel's inadequate representation at sentencing because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*In re Hardy* (2007) 41 Cal.4th 977, 1018.) We find no basis, however, to allow Madrid to withdraw his guilty plea. As such, we vacate Madrid's sentence and remand this matter to the superior court for resentencing consistent with this opinion. In all other respects, the petition is denied.

PROCEDURAL AND FACTUAL BACKGROUND

Madrid had two open cases in the superior court during the relevant time frame. One case (SCD238720) charged Madrid with violations of Penal Code[2] section 422

---

[1] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

[2] Statutory references are to the Penal Code unless otherwise specified.

(criminal threats) and section 29800, subdivision (a)(1) (felon in possession of a firearm). A prior conviction for section 422 was alleged as a strike prior and as a serious felony prior. Three prison priors were also alleged. The case was tried to a jury, resulting in an acquittal on the criminal threats count and a deadlocked jury (11-1 in favor of conviction) on the felon in possession count. A retrial of the deadlocked count was pending when Pamela Lacher began to represent Madrid.

The second case gives rise to the instant petition. In that case, an information charged Madrid with (1) two counts of possession of a deadly weapon at a penal institution (§ 450, subd. (a); counts 1 & 6); (2) two counts of damaging prison or jail (§ 4600; counts 2 & 3); and (3) two counts of vandalism under $400 (§594, subd. (a)(b)(2)(A); counts 4 & 5). The information further alleged that Madrid committed counts 4 and 5 for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members within the meaning of section 186.22, subdivision (d).

On October 11, 2012, Madrid pled guilty to two counts of vandalism under $400 (§ 594, subd. (a)(b)(2)(A)). He admitted that each offense was committed for the benefit of a criminal street gang thus elevating the offenses to felonies. Madrid also admitted three prison priors (§667.5, subd. (b)) and one strike prior (§ 667, subds. (b)-(i)). The plea was entered pursuant to *People v. West* (1970) 3 Cal.3d 595, stipulating to the use of the preliminary hearing transcript as a factual basis of the plea. Madrid also agreed to a

3

*Harvey*[3] waiver, which permitted the court to consider dismissed counts and allegations at the time of sentencing.

Sentencing was delayed until March 1, 2013. Prior to sentencing, Madrid's counsel, Lacher, made an oral motion on Madrid's behalf to withdraw the guilty plea. The motion was based on Lacher's alleged lack of preparation because she had not filed a written sentencing memorandum or a *Romero*[4] motion. In addition, Lacher noted that certain family members and friends of Madrid were not able to be present in court, and she believed she could better address sentencing issues as well as a possible section 654 argument if she was given additional time to prepare.

The court allowed Lacher to argue sentencing issues and make any necessary motions orally. At that point, Lacher emphasized that the preliminary hearing transcript referenced some photographs of vandalism that occurred inside cell 8E5, but a new report attached to the prosecution's sentencing memorandum stated that there were no photographs of the inside of jail cell 8E5. While listening to Lacher's argument, the court noted, "For somebody who isn't prepared, you are doing a good job. . . . I know you know in your head all the things you wanted to say. It's not necessary to put it on paper if you are articulating your position as well as you are now. [¶] I still haven't heard -- the basis is that you are not competent, but I find you are competent because you are

_____

3      *People v. Harvey* (1979) 25 Cal.3d 754.

4      *People v. Superior Court* (*Romero*) (1996) 13 Ca1.4th 497 (*Romero*).

4

giving a very polished and very thoughtful argument right now." The court then denied Madrid's motion to withdraw his plea.

The court then allowed the parties to address Madrid's potential sentence. Among other issues, Lacher argued section 654 should apply to counts 4 and 5, prompting the following exchange:

> "Ms. Lacher: I had forgotten I had two other issues that I wanted to address. One was the 654 issue.
>
> "The Court: Okay.
>
> "Ms. Lacher: Probation recommends that 654 doesn't apply because the acts were committed at separate times while [Madrid] was housed at separate cells at the San Diego County Central Jail. I would argue to the court it was one course of conduct. The fact he got moved from one cell to another doesn't change that course of conduct. Could have been more in the same cell. We take it at face value he did all of them.
>
> "The Court: So you are saying somebody is a tagger and he tags five utility boxes in one night, that's not five separate crimes?
>
> "Ms. Lacher: It can be a course of conduct. Courts find that all the time. A series of burglaries at convenience stores. Even though they are different convenience stores, they are all one night, one event, one course of conduct."
>
> "The Court: I don't agree with you on that."

After considering argument from counsel as well as statements from Madrid and his family, the court sentenced Madrid to prison for seven years four months based on the following: two years doubled to four years because of the prior strike as to count 4; one year four months for count 5; and three additional years for two of the prison priors.

5

After the sentencing was announced, the prosecution dismissed the remaining counts in SCD238720.

Madrid filed a timely notice of appeal, but did not obtain a certificate of probable cause. (§ 1237.5.)

Madrid's appellate counsel filed a brief under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*). We offered Madrid the opportunity to file a brief on his own behalf. He did so in which he argued his trial counsel was ineffective for her failure to investigate, prepare, and adequately communicate with him. Madrid attached a number of exhibits to his brief, but his contentions were based on alleged failures by his trial counsel that are not preserved in the record on appeal. Accordingly, we rejected Madrid's arguments without prejudice and reviewed the entire record in accordance with *Wende* and *Anders*. We did not find any reasonably arguable appellate issues, and thus, affirmed the judgment. (See *People v. Madrid* (Oct. 31, 2013, D063851) [nonpub. opn.].)

However, although we rejected the arguments contained in Madrid's supplemental brief, we deemed that brief a petition for writ of habeas corpus. We issued an order to show cause why the requested relief should not be granted. We appointed counsel to represent Madrid in these proceedings and Madrid's counsel filed a supplemental petition. In that petition, Madrid expanded on his ineffective assistance of counsel arguments and additionally argued that the prosecution failed to provide exculpatory evidence, an investigation report dated October 9, 2012 (the October 9 Report), in a timely manner in violation of *Brady*, *supra*, 373 U.S. 83. Specifically, Madrid claimed that he did not want

6

to plead guilty because he could prove that he was not guilty. He stated that he only pled guilty because the prosecution advised that if Madrid proceeded with his section 995 motion to dismiss, the prosecution would dismiss the information and refile the case. The refiled case would add a felony vandalism charge instead of the misdemeanor vandalism charge and gang enhancement, which would subject Madrid to the possibility of a longer prison sentence. Madrid also maintained the October 9 Report proved that he was innocent of the vandalism charges.

The Attorney General filed a return, disputing that the October 9 Report was exculpatory, contending the prosecution did not commit *Brady* error, and asserting Madrid's counsel was not ineffective. In addition, the Attorney General maintained a factual basis for Madrid's guilty plea existed based on the preliminary hearing transcript. Madrid filed a traverse.

After considering the petition, supplemental petition, return, traverse, and the evidence before us, we determined that Madrid's entitlement to relief hinged on the resolution of factual disputes, and an evidentiary hearing was necessary. (§ 1484; *People v. Romero* (1994) 8 Cal.4th 728, 739-740.) As such, under section 1484, we referred this matter to the presiding judge of the San Diego Superior Court to select a special master to hold an evidentiary hearing to answer 13 specific questions, primarily dealing with disclosure of the October 9 Report, whether that report was exculpatory, and Lacher's possible ineffective representation of Madrid.

The special master returned a very thorough report detailing his findings after four days of evidentiary hearings. The special master found that the evidence at the

7

preliminary hearing proved multiple acts of gang graffiti in cell 5D10. Specifically, in the upper portion of the cell door, deputies found the word "Soldier," Madrid's gang moniker, the letters "VMBLS," which stands for Barrio Mission Bay Locos, and "13," which stands for the Mexican Mafia. In another area of the cell, deputies again found the word "Soldier" as well as "Boxer," "1302," and "West Side." The Mission Bay Locos gang, of which Madrid is a member, uses the words "West Side" and number "1302." In addition, deputies found the words, "Mission Bay L's" and "Grand Avenue" etched onto the cell wall. Grand Avenue is a major thoroughfare in Mission Bay and falls within the Mission Bay Loco's gang territory. This vandalism was depicted in exhibits 11 through 14 admitted into evidence at the preliminary hearing. The vandalism was discovered May 6 and 7, 2012. On May 6, 2012, Madrid was in cell 5D10. Madrid was moved from this cell to cell 8E5 on May 7, 2012.

Also at the preliminary hearing, San Diego Police Officer Jacob Resch testified that he is an active gang detective who is familiar with Madrid. Resch opined that Madrid is a member of the Mission Bay Locos gang. He explained how the graffiti is related to Madrid's gang and how the gang would benefit from the graffiti. Thus, the evidence produced at the preliminary hearing provides a factual basis for Madrid's guilty plea to counts 4 and 5.

However, the information does not coincide with the evidence offered at the preliminary hearing. The information did not specify where the graffiti was allegedly inscribed. Nevertheless, the dates of the information for the graffiti counts (counts 4 & 5) are "on or about and between May 8, 2012 and June 18, 2012." These are the dates

8

Madrid was housed in cell 8E5. Thus, the special master found there existed a variance in the pleading between the dates of the graffiti counts proved at the preliminary hearing and those alleged in the information.

After the preliminary hearing but prior to Madrid entering a guilty plea, the prosecutor visited the jail in preparation for the hearing on Madrid's section 995 motion. At that point, he realized the pictures of the graffiti that the District Attorney investigator had included in his report dated July 2, 2012 were taken of cell 5D10, not 8E5 as stated in the report. The prosecutor therefore asked the investigator to prepare a corrected report. This corrected report is the October 9 Report.

The prosecutor orally informed Lacher of the substance of what was to become the October 9 Report before it was prepared. In addition, on either the afternoon of October 9 or the morning of October 10, a staff member from the District Attorney's office notified Lacher's office that the October 9 Report was available to be picked up. Lacher, however, never picked up the October 9 Report.

Madrid pleaded guilty on October 11, 2012, prior to the hearing on Lacher's section 995 motion. That motion was later heard and denied as to the other counts. The sentencing hearing was originally set for November 15, 2012. It was continued at Lacher's request to January 28, 2013; then to February 8, 2013; then to February 20, 2013; and then to March 1, 2013.

The October 9 Report was attached as an exhibit to the prosecution's sentencing memorandum, filed January 15, 2013. Lacher received the memorandum and exhibits a few days later. However, she did not review it in detail and did not read the October 9

9

Report until March 1, 2013, when the trial court denied her motion to continue the sentencing hearing.

The special master also emphasized the importance of the context and chronology of Madrid's guilty plea. On October 11, 2012, both of Madrid's cases were before the trial court.

The prosecutor regarded the graffiti counts as being based on the graffiti in cell 5D10. Each graffiti count was a misdemeanor (damage less than $400) under section 594, subdivision (a)(b)(2)(A), but for the gang allegation under section 186.22, subdivision (d). The latter section specifies in substance that a misdemeanor offense plus a gang allegation is a felony with a sentence range of one, two, or three years. (§ 186.22, subd. (d).)

After the preliminary hearing but before the October 11, 2012 hearing, the prosecutor received damage estimates from the Sheriff regarding the expense of correcting the graffiti to cell 5D10. The amounts involved were over the threshold required to make each of the graffiti counts a felony without regard to the gang allegation. (§ 594, subd. (b)(1).) Pursuant to section 1192.7, subdivision (c)(28), if the gang allegation were annexed to a felony vandalism, the charge would constitute a serious felony. In the context of Madrid's case, if counts 4 and 5 were refiled based on the evidence of the damage, both counts would constitute serious felonies. This fact, in turn, would mean that Madrid's prior strike conviction would also constitute a five-year serious felony prior sentencing enhancement pursuant to section 667, subdivision (a).

The prosecutor testified that before the date Madrid pled guilty and at the time his section 995 motion was pending, he informed Lacher of the damage estimates and his analysis that the graffiti charges could be refiled as felonies. The prosecutor told Lacher that, were she to prevail on the motion under section 995, it would likely be, in his words, a "Pyrrhic victory," because he would be able to refile counts 4 and 5 as felony vandalism counts, plus the gang allegations, thereby making them serious felonies and increasing Madrid's exposure by at least five years. This conversation occurred shortly before the October 10, 2012 hearing. Lacher understood the prosecutor's intention to refile as strikes if the counts were dismissed.

At the October 11, 2012 hearing, after a conference with petitioner, Lacher announced that Madrid would plead guilty to counts 4 and 5 of the information, and that she would then proceed with the hearing on the motion under section 995 as to the other counts. Lacher told the prosecutor that this would prevent him from refiling those counts as "strike" vandalism charges. The prosecutor also understood the additional benefit to petitioner that the pleas would likely result in the exclusion of Madrid's gang affiliation if the other counts on the information were tried because there was no gang allegation as to the other counts.

Thus, the special master found that Madrid's guilty plea was a preemptive strike on the date of the hearing on the section 995 motion. It was a move that provided Madrid with substantial benefits. Lacher acknowledged that this was her and Madrid's thinking. In support of Madrid's supplemental petition for a writ of habeas corpus, she declared that Madrid "was eager to avoid the consequences that could have flowed from the People

11

dismissing the information and refiling it and his losing at trial."  And Lacher's testimony

at the evidentiary hearing on October 27, 2014 echoed her declaration:

> "Actually, after I got an e-mail from [the prosecutor] about the idea
> that if we went forward with the 995 he would dismiss and refile.  I
> was about to say to Mr. Madrid that, well, don't worry.  I have a way
> around that and we can stop him from doing that.  And he said, yeah,
> I know.  You will have me plead guilty to those charges.  And so it
> was his idea as well as mine almost simultaneously."

In light of this evidence, the special master concluded that Madrid's claim that he

was misled by the alleged failure to provide the October 9 Report and Lacher's claim that

she might have caused Madrid to plead guilty to counts of which he was innocent are

"questionable" based on the following:

> "First, as explained *ante*, the evidence at the preliminary hearing
> clearly supports at least two counts of graffiti, though the dates
> alleged on the Information do not conform to that proof.
> Presumably Lacher read it because she personally wrote the 995
> motion.  [Citation.]  The question thus arises as to how she could
> have overlooked these facts and believed that there was no factual
> basis for two graffiti charges.  Moreover, when [the prosecutor] told
> Lacher about the October 9 Report, he also added his own opinion
> that to[o] was 'no big deal because the prelim had to do with a
> different cell, had to do with 5-D-10.'  [Citation.]

> "The discussions between [the prosecutor] and Lacher and between
> Lacher and [Madrid] regarding [the prosecutor's] intention to refile
> the graffiti counts as felonies based on the after-acquired damage
> estimates cast further doubt on whether Lacher and [Madrid] ever
> were, in fact, misled by the dates alleged in the Information.  In a
> declaration, Lacher states that it is her recollection 'that the conduct
> [Madrid] admitted related specifically to damages purporting to be
> done to cell 8-E-5' and that [Madrid] 'always maintained that he was
> not guilty of any damage to cell 8-E-5.'  [Citation.]  [Madrid's] own
> declaration makes similar claims. [Citation.]  However, neither the
> change of plea form nor the transcript of the guilty plea mentions
> cell 8E5 or any particular cell.  Paragraph 15 of the form recites:  'I
> admit that on the dates charged I:  *stip to preliminary hearing*

12

*transcript as a factual basis for the plea. People v. West.*' The italicized language is handwritten in the space provided by the form. The transcript of the plea hearing of October 11, 2012, reflects the same stipulation. [Citation.] And, as explained *ante*, the evidence at the preliminary hearing amply supports the graffiti charges.

"The reference to '*People v. West*' is likewise significant. That reference indicates that [Madrid] was exercising the right to plead guilty to an offense that is 'reasonably related to [his] conduct' in order to take advantage of a plea agreement or to seek a reduced sentence from what he might otherwise face. (*People v. West* (1970) 3 Cal.3d 595, 613.) The Supreme Court has characterized such a plea as 'a plea of nolo contendere, not admitting a factual basis for the plea.' (*In re Alvernaz* (1992) 2 Cal.4th 924, 932.) 'Such a plea, also referred to as an *Alford* plea, based on *North Carolina v. Alford* (1970) 400 U.S. 25, 37-38, allows a defendant to plead guilty in order to take advantage of a plea bargain while still asserting his or her innocence.' (*People v. Rauen* (2011) 201 Cal.App.4th 421, 424.) Madrid's expert, [Michael] McCabe, agreed that this is the effect of such a plea. [Citation.]

"Though there was no plea agreement, [Madrid] received significant benefit by preventing the prosecutor from re-filing those counts as strikes and by providing a basis to exclude evidence of his gang affiliation on any trial of the other counts. Moreover, as it turned out, after [Madrid] received a term of 7 years, 4 months on those two counts (which was a year less than the sentence recommended in the pre-sentence report) and the other counts and allegations in both cases were dismissed.

"The decision to plead guilty to the graffiti counts was a strategic one that yielded significant benefits to [Madrid]. Lacher testified that [Madrid] was 'well aware' of the benefits of his plea ('ramifications'). [Citation.] Though months after the fact of the plea, he and his counsel aver they would not have done so had they actually been aware of the information in the October 9 Report, the evidence is otherwise."

The special master found that the October 9 Report was not exculpatory. It did not suggest that Madrid was possibly innocent of the vandalism counts. It simply clarified what cell the pictures of the vandalism (exhibits 11-14 at the preliminary hearing) came

13

from. In this sense, the October 9 Report added no information and was consistent with the evidence at the preliminary hearing. The special master further noted that there was no evidence at the preliminary hearing that there was any graffiti in cell 8E5. Again, the confusion occurred based on the dates of counts 4 and 5 provided in the information and the July 2, 2012 report of the District Attorney investigator, which indicated that the pictures of the graffiti were from cell 8E5.

The special master also found Lacher was unprepared to represent Madrid at the March 1, 2013 sentencing hearing. "Lacher expected the matter to be continued a fourth time. The court denied that motion to continue. She had not meaningfully read the prosecutor's sentencing memorandum. She did not have the letters of support and petitioner's supportive family members present. [Citation.] She did not file a motion to dismiss petitioner's prior strike for sentencing purposes pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Ca1.4th 497, which she normally would have done. [Citation.]"

The special master further concluded that Lacher's conduct fell below the prevailing professional norms in several respects. "She failed to pick up discovery that she was notified existed and which she and [Madrid] now claim was crucial. She failed even to read the prosecution sentencing memorandum when she received it. She gambled on being able to continue the sentencing hearing a fourth time and did not prepare for the contingency that the court might say 'enough.' "

The special master noted that Lacher "failed to read the preliminary hearing transcript with the degree of care that prevailing professional norms require." Indeed,

14

Lacher testified that she never reviewed the transcript of the preliminary hearing to determine if the evidence was sufficient to establish two graffiti counts, albeit in a different cell or on different dates. The special master found that Lacher's remarks to the sentencing court "similarly reflect a misunderstanding of the evidence adduced at the preliminary hearing."

Despite the special master's finding that Lacher's representation fell below the prevailing professional norms, the special master concluded Madrid was not prejudiced, because it is not reasonably probable that a determination more favorable to Madrid would have resulted in the absence of Lacher's failures. The special master based this conclusion on two findings. First, the special master observed that Lacher made an effective argument at sentencing, "notwithstanding her lack of preparation and her expectation that the hearing could be continued." Second, Madrid received a very good result, noting that if the prosecutor had refiled the graffiti accounts as strike offenses, Madrid's exposure would have become 23 years four months, even if he was sentenced as to only one of them. He also would have been subject to a second strike.

After the special master produced his report, the parties submitted supplemental letter briefs commenting on the report. At the conclusion of his letter, Madrid still asks that his "convictions" "be reversed with a remand to give him the opportunity to withdraw his plea." In addition, in his letter brief, Madrid states that counts 4 and 5 could have been subject to section 654, and therefore, Madrid could have received a lesser sentence. We construe this argument as an additional request for relief that Madrid's sentence be vacated and the matter be remanded for resentencing.

15

DISCUSSION

In considering the claims in Madrid's petition for writ of habeas corpus with the benefit of the report by the special master, we review two issues. First, are the special master's factual findings supported by substantial evidence? Second, if the findings are so supported, do we independently determine that Madrid was not prejudiced by Lacher's ineffective representation of him?

I

*THE SPECIAL MASTER'S FACTUAL FINDINGS*

"We review the [special master's] factual findings under the substantial evidence standard and independently review questions of law." (*Mealy v. B-Mobile, Inc.* (2011) 195 Cal.App.4th 1218, 1222.)

Here, we have the benefit of a very thorough, well written report from the special master. The special master makes clear factual findings and appropriately cites to the evidence to support each finding. In addition, the special master provides significant detail, based on the applicable law and the record, to provide ample support for each factual finding. We appreciate such detailed work product and are satisfied that substantial evidence supports the special master's factual findings as detailed in the procedural and factual background section above.

Nevertheless, we address two of Madrid's challenges to the special master's factual findings. First, he disagrees with the special master's finding that the October 9 Report was not *Brady* material. He claims the court erred because it viewed the October 9

16

Report through "too narrow a prism." Madrid therefore contends that because the report would have helped Madrid at sentencing, it qualifies as *Brady* material. We disagree.

To be considered *Brady* material, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 176.) The evidence may be material to guilt or punishment. (*Brady*, *supra*, 373 U.S. at p. 87.) Here, the special master was correct that the October 9 Report does not qualify as *Brady* material.

The October 9 Report was not exculpatory. It added no new information related to Madrid's guilt nor did it impact his possible sentence. Instead, it merely clarified an inadvertent error in the information (incorrect dates) as well as an error in the investigator's report that stated the pictures of the graffiti came from cell 8E5. Further, the October 9 Report was consistent with the testimony at the preliminary hearing, which referred to the graffiti occurring in a single cell on the fifth floor.

Madrid ignores the de minimus impact of the October 9 Report, and instead insists that Lacher would not have allowed Madrid to plead guilty to the vandalism counts if she had timely read the report. Madrid bases his position on the belief that the vandalism counts related only to cell 8E5. This assumption has no basis in the record before us.

As the special master noted, there was no evidence at the preliminary hearing that there was any graffiti in cell 8E5. When Madrid entered his guilty plea, there was no reference to the graffiti being found in cell 8E5. Instead, it was clear from the preliminary hearing transcript that sufficient evidence existed showing that Madrid vandalized a single cell. The October 9 Report casts no doubt on that evidence. Nor

17

does it alter the prosecution's theory in any way. Madrid vandalized a single cell as set forth in the preliminary hearing and the October 9 Report. We therefore agree with the special master that the report was not exculpatory.

Next, Madrid claims the special master erred in finding that Lacher's failure to file a sentencing memorandum and a *Romero* motion did not fall below an objective standard of reasonableness under prevailing norms in the San Diego legal community. The special master stated that the "the answer to this question turns on the circumstances of the case. Neither the statutes nor the court rules require that a *Romero* motion be in writing or that a sentencing memorandum be filed. It would be an abuse of discretion to refuse to hear a *Romero* motion or a sentencing argument simply because a written motion had not been filed. (*People v. Carmony* (2004) 33 Cal.4th 367, 375 [trial court has an obligation to hear defendant's request that it invoke its power under section 1385]; *People v. Marsden* (1970) 2 Cal.3d 118, 124 ['A judicial decision made without giving a party an opportunity to present argument or evidence in support of his contention "is lacking in all attributes of a judicial determination." '].) And, in this special master's experience, judges of the San Diego Superior Court frequently allow *Romero* motions to be raised orally."

The special master also discussed circumstances in which the failure to file a written *Romero* motion or sentencing memorandum would fall below prevailing professional norms, but explained this case does not involve any such circumstances.

Here, Madrid fails to articulate why the special master's finding is flawed. He points to no authority requiring the motion or sentencing memorandum be in writing. Nor does he explain why the circumstances of this case warrant a written *Romero* motion

18

or sentencing memorandum. He simply claims Lacher "took a dive" and concludes her failure to file a written motion or sentencing memorandum fell below the prevailing professional norms. Such specious reasoning does not carry the day. We are satisfied that the special master's finding on this issue is supported by substantial evidence.

II

*INEFFECTIVE ASSISTANCE OF COUNSEL*

Having concluded that the special master's factual findings are supported by substantial evidence, we next turn to Madrid's contention that Lacher was prejudicially ineffective. To show that trial counsel's performance was constitutionally defective, an appellant must prove: (1) counsel's performance fell below the standard of reasonableness, and (2) the "deficient performance prejudiced the defense." (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688 (*Strickland*).) It is the defendant's burden to prove the inadequacy of trial counsel, and the defendant's burden is difficult to satisfy on direct appeal. Competency is presumed unless the record affirmatively excludes a rational basis for trial counsel's choice. (*People v. Ray* (1996) 13 Cal.4th 313, 349; *People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260.) We reverse on the ground of inadequate assistance only if the record affirmatively discloses no rational tactical purpose for counsel's act or omission. (*People v. Lucas* (1995) 12 Cal.4th 415, 436-437.)

"Competent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record. Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of

19

defense, that, to their best and reasonable professional judgment, seem appropriate under the circumstances." (*People v. Freeman* (1994) 8 Cal.4th 450, 509.)

Here, the special master determined that Lacher's performance fell below the standard of reasonableness, but ultimately concluded that Madrid was not prejudiced. Because this is a legal determination, we review the special master's conclusion de novo.

As a threshold matter, we observe that the Attorney General does not dispute the findings of the special master that Lacher's performance fell below prevailing professional norms. Nor could the Attorney General credibly do so. Lacher's performance was abysmal. She failed to pick up discovery that she was notified existed and which she and Madrid now claim was crucial. Lacher did not read the prosecution's sentencing memorandum when she received it. She gambled on being able to continue the sentencing hearing a fourth time and did not prepare for the contingency that the court might not grant another continuance. Lacher failed to read the preliminary hearing transcript with the degree of care that the prevailing norms require. Indeed, Lacher's testimony at the evidentiary hearing underscored the fact that she never reviewed the transcript of the preliminary hearing to determine if the evidence was sufficient to establish two graffiti counts, albeit in a different cell or on different dates.

Clearly, Lacher's poor representation of Madrid satisfies the first prong under *Strickland* as her performance fell below the standard of reasonableness. (See *Strickland*, *supra*, 466 U.S. at pp. 687-688.) We thus must independently determine if Lacher's performance prejudiced Madrid. (See *ibid*.) Prejudice flowing from criminal defense counsel's deficient performance is shown when there is a reasonable probability that, but

20

for counsel's unprofessional errors, the result of the proceeding would have been different. (*In re Hardy*, *supra*, 41 Cal.4th at p. 1018.) Reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Id*. at pp. 1018-1019; see *Strickland, supra,* at pp. 693-694 ["reasonable probability" does not mean "more likely than not," but merely "probability sufficient to undermine confidence in the outcome."].)

The primary relief Madrid seeks in his petition for writ of habeas corpus is the opportunity to withdraw his guilty plea based on Lacher's ineffective representation of him. However, Madrid fails to link Lacher's flawed performance to his guilty plea. The lion's share of Lacher's deficiencies relate to the sentencing hearing. In fact, the only shortcoming that occurred prior to Madrid's guilty plea was Lacher's failure to timely obtain and read the October 9 Report.

In support of the supplemental petition for writ of habeas corpus, Lacher submits a declaration in which she claims she would not have advised Madrid to plead guilty to counts 4 and 5 if she had known about the existence of the October 9 Report. Similarly, Madrid claims he would not have pled guilty if he knew about the October 9 Report because it "corroborate[d] his story" that he did not vandalize cell 8E5. Like the special master, we fail to see the connection between the October 9 Report and the decision to plead guilty.

The October 9 Report is not exculpatory. It does not prove that Madrid did not commit vandalism. Instead, the report clarifies where the pictures of the graffiti were taken. The pictures (exhibits 11-14 at the preliminary hearing) were of cell 5D10, not cell 8E5. Both Lacher's declaration and Madrid's "story" hinge on the mistaken belief

21

that if there was no graffiti in cell 8E5, there is no factual support for Madrid's guilty plea to counts 4 and 5. This simply is not true.

As we discuss at length above, the evidence adduced at the preliminary hearing established that graffiti occurred in a cell on the fifth floor of the jail house, which was 5D10. The graffiti was found when Madrid was the only occupant of cell 5D10. Nothing in the October 9 Report changes any of these facts. As such, it is unclear why Lacher would not have advised Madrid to plead guilty or why Madrid would have refused to plead guilty if they knew about the October 9 Report.

Madrid's and Lacher's argument is all the more curious because of the reason they claim Madrid pled guilty in the first instance. The record makes it clear that Lacher advised Madrid to plead guilty and Madrid pled guilty based on their desire to prevent the prosecutor from refiling the vandalism charges as serious felonies and increase Madrid's potential prison time as well as face the possibility of a second strike.

Against this record, Lacher's failure to obtain and read the October 9 Report had no impact whatsoever on Madrid's decision to plead guilty to counts 4 and 5. Accordingly, we determine that Lacher's ineffective performance did not prejudice Madrid in pleading guilty.

In contrast, we are concerned about the impact of Lacher's defective representation of Madrid at the sentencing hearing. Although we agree with the special master, that Lacher, in discussing sentencing issues, was able to effectively argue for a lesser sentence, her lack of preparation severely undermined her argument that section 654 should limit Madrid's sentence.

22

When Lacher begins to discuss section 654, her lack of preparation is apparent. She starts by discussing the probation report, noting that it states section 654 should not apply because the graffiti concerns two different cells. The probation report does contain such analysis: "PC654 prevents multiple punishments for the same act or omission. The acts were committed at separate times while the defendant was housed in separate cells at the San Diego Central Jail. Therefore, PC654 does not apply." Had Lacher thoroughly reviewed the preliminary hearing transcript she would have known this passage of the probation report was incorrect. In fact, the probation report fails to provide the actual factual basis of the vandalism charge. It implies that graffiti was found in cells 8E5 and 5D10. However, in discussing the damage to the various cells, it is clear the probation report is focused on counts 2 and 3 (destruction of prison property) instead of counts 4 and 5, which concerned graffiti in a single cell. Therefore, Lacher's reference to the probation report in the context of her section 654 argument should have emphasized that the probation report was wrong. The graffiti only occurred in one cell. She should have known this critical fact. She could have known it had she more thoroughly read the preliminary hearing transcript. She obviously did not do so. Moreover, the October 9 Report underscored the fact that the graffiti occurred in one cell. This is the same conclusion related in the previous July 2 report, albeit that report stated the pictures of the graffiti were from a different cell.

When the superior court sentenced Madrid, it adopted the probation report's view of the vandalism counts: "As to count 5, I am going [to] find that [it] is not one course of conduct. It is different [cells]." The court was confused about where the graffiti

23

occurred. Thus, its analysis under section 654 was not completely based on the factual basis of counts 4 and 5. The record is clear that the vandalism occurred in only one cell, not two.

Because Lacher failed to notice that the probation report was incorrect and did not argue the vandalism occurred in one cell, the court adopted the probation report's analysis of counts 4 and 5. As such, we are concerned that the superior court did not properly consider whether section 654 applies.[5] We therefore determine that there is a reasonable probability that, but for Lacher's unprofessional errors, the result of the proceeding would have been different. (*In re Hardy*, *supra*, 41 Cal.4th at p. 1018.) On this record, our confidence in the outcome is undermined. (See *id*. at pp. 1018-1019.)

We also find Madrid was prejudiced during sentencing even if section 654 does not apply to counts 4 and 5. California's three strikes provisions require, among other things, that "[i]f there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to [this section]." (§ 667, subd. (c)(6); see *People v. Hendrix* (1997) 16 Cal.4th 508, 513-515.) In addition, "[i]f there is a current conviction for more than one serious or violent felony as described in [subdivision (c)(6)], the court shall impose the sentence for each conviction

---

5    The special master's findings as to the graffiti illuminate the possibility that section 654 could apply: "Also clear is that the graffiti consisted of four 'clusters' of gang graffiti, each of which is linked to [Madrid] or his gang. All four clusters are on the cell door, but each is spatially separated from the others. Thus, the evidence adduced at the preliminary hearing establishes between one and four violations of section 594, subdivision (a)(b)(2)(A), vandalism by graffiti." (Fn. omitted.)

24

consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law." (§ 667, subd. (c)(7).)

By implication, a trial court has discretion to impose concurrent sentences only "if the multiple current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " (*People v. Hendrix*, *supra*, 16 Cal.4th at p. 512; see *People v. Lawrence* (2000) 24 Cal.4th 219, 233.) Crimes are committed "on the same occasion" when there is close "temporal and spatial proximity between the acts underlying the current convictions." (*People v. Deloza* (1998) 18 Cal.4th 585, 595.) Crimes " 'aris[e] from the same set of operative facts' " depending on "the extent to which common acts and elements of such offenses unfold together or overlap, and the extent to which the elements of one offense have been satisfied, rendering that offense completed in the eyes of the law before the commission of further criminal acts constituting additional and separately chargeable crimes." (*Lawrence*, *supra*, at p. 233.)

Here, the superior court found that counts 4 and 5 were not based on one course of conduct because it mistakenly believed those counts concerned two different cells. The superior court was misinformed because Lacher was not prepared and unfamiliar with the factual basis of the vandalism counts. Also, the probation report was wrong. Thus, it is clear that Lacher's deficient performance did not allow the superior court to sufficiently consider, based on the actual evidence in the record, whether counts 4 and 5 were committed on the same occasion or arose from the same set of operative facts. For this reason as well, we determine that Madrid was prejudiced by Lacher's performance at sentencing.

25

We also observe that much of the confusion in this matter could have been avoided had the prosecutor spoken up during the sentencing hearing. As the prosecutor testified during the evidentiary hearing, he regarded the graffiti counts as being based on the graffiti in cell 5D10. In other words, he knew that counts 4 and 5 only related to one cell. When Lacher and the court discussed the graffiti occurring in two cells, the prosecutor could have interjected to make it clear that the counts concerned only one cell. In addition, the prosecutor could have pointed out that the probation report was incorrect. Although the prosecutor's inaction does not excuse Lacher's performance here, we are troubled nonetheless by the prosecutor's silence.

## DISPOSITION

Madrid's sentence is vacated. We remand this matter to the superior court to resentence Madrid consistent with this opinion. We deny the petition in all other respects.

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

26